IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-50252
Summary Calendar
_____


SAMUEL ORELLANA,

Plaintiff-Appellant,

versus

JACK KYLE, Chairman, Board of
Pardon and Parole,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Western District of Texas
(A 94 CV 768)
_____
(August 11, 1995)

Before JOLLY, JONES, and STEWART, Circuit Judges.

PER CURIAM:[*]


Samuel Orellana, a Texas state prisoner proceeding pro se and

in forma pauperis (IFP), filed a civil right suit pursuant to 42

U.S.C. § 1983 against Jack Kyle in his official capacity as

Chairman of the Texas Board of Pardons and Paroles.  Orellana

alleged that parole review procedures violated the due process

[*]Local Rule 47.5 provides:  "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession."  Pursuant to that Rule, the court has determined
that this opinion should not be published.

clause. He also alleged that a change in rules governing the scheduling of parole reconsideration hearings violated the Ex Post Facto Clause. Orellana sought injunctive relief only. A magistrate judge recommended dismissing Orellana's suit, with prejudice, as frivolous pursuant to 28 U.S.C. § 1915(d). The magistrate judge determined that 1) Orellana presented a mixed petition raising both habeas corpus and § 1983 claims; 2) Orellana had no constitutionally protected liberty interest in parole; 3) there was no Ex Post Facto violation; 4) injunctive relief was not warranted; and 5) the defendant was entitled to absolute immunity. Orellana objected to the magistrate judge's report and recommendation. Adopting the magistrate judge's report and recommendation, the district court dismissed Orellana's suit pursuant to § 1915(d). Orellana filed a timely notice of appeal.

I

The initial question is whether Orellana's claims are cognizable under § 1983. "Section 1983 is an appropriate legal vehicle to attack unconstitutional parole procedures or conditions of confinement." Cook v. Texas Dep't of Criminal Justice Transitional Planning Department, 37 F.3d 166, 168 (5th Cir. 1994). If, however, a prisoner is challenging the result of a specific defective parole hearing, or is challenging a parole board's rules and procedures that affect his release, and resolution would automatically entitle him to accelerated release, then the challenge must be pursued by writ of habeas corpus. Id. A claim

that has an indirect impact on whether a claimant eventually receives parole may still be cognizable under § 1983.  If such a § 1983 complaint contains both habeas and § 1983 claims, the district court should separate the claims and decide the § 1983 claims. Serio v. Members of La. State Bd. of Pardons, 821 F.2d 1112, 1119 (5th Cir. 1987).

Orellana alleged that he was eligible for and was denied parole on four different occasions.  He alleged that the reasons given for the denials were vague and ambiguous and, therefore, did not comply with due process notice requirements.  He then alleged numerous parole review procedures which violate due process. Orellana also challenged the application of new procedures as violative of the Ex Post Facto Clause.

Liberally construed, (as they must be), Orellana's pleadings are not challenging a single defective hearing affecting his parole eligibility, nor is he arguing that he is automatically entitled to an accelerated release.  Orellana is seeking to have the Parole Board comply with due process and Ex Post Facto requirements in its parole review procedures.  It appears that a favorable determination on these issues would not automatically entitle Orellana to accelerated release.  Therefore, we will consider that his claims are properly raised under § 1983.

Orellana argues that the parole board's parole review procedures deny prisoners due process because prisoners are not given advance written notice of hearings, not afforded an opportunity to be heard, denied access to all materials considered by the board, and denied the right to be accompanied by persons of their choice. Orellana also asserts that the information relied on by the Board to deny parole was "admittedly false."

"`[N]either habeas nor civil rights relief can be had absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" Hilliard v. Bd. of Pardons and Paroles, 759 F.2d 1190, 1192 (5th Cir. 1985)(citation omitted). To the extent that Orellana seeks relief regarding alleged due process violations resulting from the parole review process, the district court properly disposed of his claim. After Sandin v. Conner, ____ S. Ct. ____ (1995 WL3 60217, June 19, 1995), prisoners may no longer peruse state statutes and prison regulations searching for the grail of limited discretion. Instead, a prisoner has a liberty interest only in "freedom[s] from restraint . . . impos[ing] *atypical* and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at * 9 (emphasis added). Although Sandin cites with approval cases in which it was held that state law could create a constitutional liberty interest in good-time credits, Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963

(1974), or release on parole, Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415 (1987), it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional "liberty" status.[1] Sandin itself involved disciplinary segregation, a severe form of prison discipline, yet held that such confinement, "though concededly punitive, does not present a dramatic departure from the basic conditions of Conner's indeterminate sentence." ___ S.Ct. ___.[2] Few other incidents of prison life involve such a level of deprivation as disciplinary segregation. Thus, while, as Sandin noted, prisoners retain constitutional remedies under the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment, ___ S.Ct. ___, n.11, the ambit of their potential Fourteenth Amendment due process liberty claims has been dramatically narrowed.

Orellana's claims might have implicated the narrow range of

---

[1]Sandin expressly characterizes the unusual deprivations in Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254 (1980) (transfer to a mental hospital, and Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028 (1990) (forcible administration of psychotropic drugs), as also involving a liberty interest.

[2]Technically, the Court stated that it need not overrule Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864 (1983), a case that found a liberty interest but no due process violation in confinement to administrative segregation. Sandin observes that Hewitt did not depend on the existence of a constitutional right, a question "anterior" to the conclusion that there has no deprivation. ___ S.Ct. ___, n.5. It is unlikely, however, that administrative segregation can give rise to any constitutional claim after Sandin.

prisoner liberty interests remaining after <u>Sandin</u> because he challenges procedures relative to parole, which affects the duration of confinement.  The applicable Texas parole statutes have been held, however, to confer no such liberty interest.  <u>Creel v. Keene</u>, 928 F.2d 707, 712 (5th Cir.), <u>cert. denied</u>, 501 U.S. 1210 (1991); <u>Gilbertson v. Texas Bd. of Pardons & Paroles</u>, 993 F.2d 74, 75 (5th Cir. 1993).  It follows that because Orellana has no liberty interest in obtaining parole in Texas, he cannot complain of the constitutionality of procedural devices attendant to parole decisions.

III

Orellana argues that a change in rules that altered the period between parole reconsideration hearings constitutes an Ex Post Facto violation.  Relying on Eleventh Circuit law, <u>Akins v. Snow</u>, 922 F.2d 1558 (11th Cir. 1991), he argues that the rule is equivalent to law for Ex Post Facto purposes because parole reconsideration hearings are an essential part of parole eligibility.  Liberally construed, Orellana's brief argues that the parole board is illegally employing procedures enacted after the date of the commission of his offense and conviction, which results in an extension of the period between his parole reviews.

A law need not impair a vested right to violate the Ex Post Facto prohibition.  <u>See</u> <u>Weaver v. Graham</u>, 450 U.S. 24, 29-30 (1981).  "The presence or absence of an affirmative, enforceable right is not relevant. . . . Critical to relief under the Ex Post

Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases the punishment beyond what was prescribed when the crime was consummated." Id. at 30.

Orellana alleged that he was sentenced to a term of 10 years imprisonment to begin March 18, 1988. The record does not reveal his offense or conviction date. Without reviewing any particular statute or provision, the district court held that a change in parole rules that alters the period of time between parole reconsideration hearings does not violate the Ex Post Facto Clause because it "does not increase the punishment prescribed for an offense."

This court recently reviewed parole review provisions concerning the timing of reconsideration hearings. Creel v. Kyle, 42 F.3d 955 (5th Cir.), cert. denied, 115 S.Ct. 1706 (1995). We found that a 1985 amendment to parole rules does not change the law and, thus, there was no Ex Post Facto violation. Id. at 957; see also California Dep't of Corrections v. Morales, 115 S.Ct. 1597 (1995).

The district court did not abuse its discretion by dismissing Orellana's Ex Post Facto claim as frivolous.

IV

The district court found that defendant Kyle was absolutely immune from suit. Relying on Hilliard, 759 F.2d at 1193-94, the court held that parole board members are absolutely immune from §

1983 damages suits for the performance of their quasi-judicial roles in making individual parole decisions.

Whether a defendant possesses absolute immunity from suit is a question of law that we review <u>de</u> <u>novo</u>. <u>Walter v. Torres</u>, 917 F.2d 1379, 1383 (5th Cir. 1990). Although the district court relied on established law regarding damages suits, Orellana sued for injunctive relief. "Neither absolute nor qualified immunity extends to suits for injunctive or declaratory relief under § 1983." <u>Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare</u>, 925 F.2d 844, 849 (5th Cir. 1991). The district court therefore erred as a matter of law in finding the defendant immune from this injunctive suit. Because, however, Orellana's claims were properly dismissed as frivolous, this error is harmless.

V

For the reasons stated herein, the dismissal of Orellana's petition is

A F F I R M E D.