**Keith W. BRUNS, Plaintiff,**

v.

**Sally HALFORD, et al., Defendants.**

No. C 94–0258.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Jan. 23, 1996.

Keith W. Bruns, pro se.

R. Andrew Humphrey, Assistant Attorney General, Iowa Attorney General's Office, Des Moines, Iowa, for defendants.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND PROCEDURAL BACKGROUND .................... 1297

II. STANDARDS FOR SUMMARY JUDGMENT ............................ 1298

III. FACTUAL BACKGROUND ........................................... 1298
    A. Undisputed Facts ................................................ 1298
    B. Disputed Facts ......:............................................ 1300

IV. LEGAL ANALYSIS ................................................. 1300
    A. Does Bruns Have A Due Process Claim?.............................. 1300
        1. The Sandin decision ........................................ 1300
        2. Sandin's import for prisoner due process claims ...................... 1301
        3. Plaintiff's due process claim .................................. 1303
    B. Are Defendants Entitled To Qualified Immunity? ......................... 1304

V. CONCLUSION ...................................................... 1306

---

This matter comes before the court pursuant to defendants' August 24, 1995, motion for summary judgment, resisted September 5, 1995. The plaintiff, a prisoner in the Iowa Department of Corrections system, filed a complaint pursuant to 42 U.S.C. § 1983, alleging violation of his due process rights under the Fourteenth Amendment. The prisoner claims that his due process rights were violated by his placement and continuation in administrative segregation for ninety days for refusing to give any information about an assault on another inmate which he witnessed. Defendants have moved for summary judgment on the ground that plaintiff's due process claim is precluded by the recent Supreme Court decision in *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), or, in the alternative, that defendants are entitled to qualified immunity.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Keith W. Bruns, formerly an inmate at the Iowa Mens Reformatory (IMR) in Anamosa, Iowa, and now an inmate at the Iowa State Penitentiary (ISP) in Fort Madison, Iowa, filed an application to proceed *in forma pauperis* in this action pursuant to 42 U.S.C. § 1983 on July 8, 1994. Mr. Bruns's application was approved on December 15, 1994, and his complaint was filed on that date. The complaint in this matter asserts that Mr. Bruns's due process rights under the Fourteenth Amendment were violated when he was placed in administrative segregation at the IMR on December 15, 1993, and kept in that status for approximately ninety days, for refusing to give any informa-

tion about an assault on another inmate which he admits that he witnessed. Defendants waived service and answered the complaint on January 26, 1995.

Pursuant to a scheduling order filed January 27, 1995, the dispositive motion deadline in this matter was originally set for May 30, 1995, and plaintiff eventually filed a pre-trial statement on June 29, 1995. However, on July 26, 1995, defendants filed a status report suggesting that no evidentiary hearing would be required if they were allowed an extension of the dispositive motion deadline to assert a motion for summary judgment in light of the Supreme Court's decision in *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, which had been handed down on June 19, 1995. Defendants therefore moved for an extension of the dispositive motion deadline on July 26, 1995, and that motion was granted. The new dispositive motion deadline was set for August 23, 1995. Defendants' motion for summary judgment based on the *Sandin* decision was docketed on August 24, 1995, and plaintiff resisted that motion on September 5, 1995.

In their summary judgment motion, defendants contend that Mr. Bruns's claim of violation of his due process rights as the result of his placement and continuation in administrative segregation is entirely precluded by the decision in *Sandin*. Defendants characterize *Sandin* as holding that placement of an inmate in punitive or administrative segregation does not present an "atypical significant deprivation" of a liberty interest, and hence provides an insufficient basis for a prisoner's claim of violation of due process. Defendants also contend that defendants' actions towards Mr. Bruns violated no clearly

established constitutional rights, and therefore defendants are entitled to qualified immunity.

Mr. Bruns contends that a genuine issue of material fact exists as to whether his transfer to administrative segregation was an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Specifically, he contends that as a "lifer," he could not safely bear the stigma of being a "snitch," and that defendants improperly compelled him to choose between risking his life by cooperating in the investigation of the inmate assault and submitting to administrative segregation for refusing to cooperate in that investigation. He also contends that defendants are not entitled to qualified immunity, because they were "acting outside their normal discretionary functions allowed by law," and knew that their conduct violated his constitutional rights.

## II. STANDARDS FOR SUMMARY JUDGMENT

The court has considered the standards for summary judgment in some detail in a number of recent rulings. *See, e.g., Waitek v. Dalkon Shield Claimants Trust,* 908 F.Supp. 672 (N.D.Iowa 1995); *Jenkins v. Wal-Mart Stores, Inc.,* 910 F.Supp. 1399, 1407 (N.D.Iowa 1995); *Kracht v. Aalfs Assocs. H.C.P.,* 905 F.Supp. 604, 608–610 (N.D.Iowa 1995). Suffice it to say here that in order to prevail on a motion for summary judgment pursuant to *Fed.R.Civ.P.* 56(b), the defendants bear "the initial responsibility [under *Fed.R.Civ.P.* 56(c) ] of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). When the defendants have borne this burden here, in order to defeat the motion, Mr. Bruns "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355,

89 L.Ed.2d 538 (1986). Instead, Mr. Bruns must point to specific portions of the record and designate "specific facts showing that there is a genuine issue for trial." *Fed. R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

If Mr. Bruns fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then the defendants are "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990). However, if the court can conclude that a reasonable trier of fact could return a verdict for Mr. Bruns, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the factual background to defendants' motion for summary judgment.

## III. FACTUAL BACKGROUND

### A. Undisputed Facts

The record reveals that the following facts are not in dispute. On December 11, 1993, an inmate at the IMR named Hernandez was assaulted by another inmate named Sanchez. Although plaintiff Bruns, also an inmate at the IMR, admitted that he was present during or immediately after the assault, he refused to provide IMR officials investigating the incident with any information. Mr. Bruns indicated to officers investigating the assault that he was a "lifer," and therefore it would be unsafe for him to provide any infor-

mation, because doing so might brand him as a "snitch," thus placing his life in serious danger in the general population at the IMR. In notes following an interview with Mr. Bruns on December 14, 1993, defendant Schafer indicated that he and defendants Sissel and Thalacker doubted that they should "allow a lifer with a bad attitude to interfere with an investigation or withhold information during an investigation and to do so blatantly." Defendant Schafer's notes also indicate that he told Mr. Bruns "an uncooperative lifer" might be transferred to some other population where his attitude could be tolerated.

On December 15, 1993, during another interview with defendant Schafer, Mr. Bruns indicated that his position on giving information had not changed. Shortly thereafter, Mr. Bruns was served with an "Immediate Administrative Segregation Notice," advising him that he was being placed in administrative segregation. The notice indicated that the grounds for this action were that Mr. Bruns might be a danger to other persons or property, might pose a threat to the security, tranquility, and good order of the institution, and that he was involved in a pending investigation and/or criminal prosecution. The specific reason identified in the notice for Mr. Bruns's placement in administrative segregation was "[c]omplicity in a serious assault and interfering with an investigation." Mr. Bruns was therefore placed in administrative segregation. Mr. Bruns's placement notice indicated that he would remain in administrative segregation pending further investigation of the Hernandez assault.

Placement of inmates in administrative, or "non-voluntary, non-disciplinary" status, is provided for under Iowa Department of Corrections Policy SE–IV–02. That policy provides that the warden of a facility may segregate an inmate from the general population to maintain control and safety, and to manage inmate behavior. Iowa Department of Corrections Policy IN–V–05 further provides that an inmate may be segregated for matters of security, order, and tranquility. Iowa Department of Corrections policies also provide for regular review of the placement status of inmates in administrative segregation.

Mr. Bruns's status in administrative segregation was reviewed on December 15, 1993, and again on December 23, 1993, and was continued without change each time. Following the IMR adjustment committee's review of Mr. Bruns's status on December 23, 1993, the adjustment committee filed a report indicating that Mr. Bruns's status was "NVND," that is, non-voluntary, non-disciplinary segregation, and that Mr. Bruns was continued in that status because, as the committee explained to Mr. Bruns in person, "investigation of [the assault on Hernandez] is ongoing, and that prosecution may result. [Mr. Bruns] was told that the Department of Criminal Investigation has been contacted and will be coming to conduct some interviews, and that he will be segregated until this is done in order to preserve the integrity of that investigation." Adjustment Committee Report, December 23, 1993.

Mr. Bruns's status was reviewed again on January 6, 1994. At that time, the adjustment committee's report indicates Mr. Bruns still declined to cooperate in the investigation of the assault because he was a lifer. The committee noted that the level of Mr. Bruns's complicity in the assault was unknown, and that Mr. Bruns had been a "problematic" inmate in the past. The committee therefore indicated its belief that Mr. Bruns should be recommended for transfer to the ISP, and that he should remain in his present segregated status until investigation of the assault had been concluded. A further review with no change in status occurred on February 17, 1994.

On March 10, 1994, the adjustment committee again reviewed Mr. Bruns's status. At that time, the committee report indicates that Mr. Bruns had still not cooperated in the investigation of the assault on inmate Hernandez, but nonetheless the committee recommended his release to general population. The committee also considered that Mr. Bruns might be transferred to the ISP. Mr. Bruns was released from NVND status on March 10, 1993, but was subsequently transferred to the ISP.

## B. Disputed Facts

Mr. Bruns asserts that there is a dispute of facts as to whether his segregation was administrative or punitive. Although he does not designate any specific item in the record in support of his position, he contends that the facts show that he was placed in segregated status to punish him for not cooperating in the investigation of the assault on inmate Hernandez, and that defendants disregarded the risk to him if he had cooperated in the investigation. Mr. Bruns does not identify any difference in conditions between "administrative" and "punitive" segregation generally at the IMR, or that there was any difference in conditions in one status or the other in his case.

Mr. Bruns further contends that there is a genuine issue of material fact as to whether his segregation constituted an "atypical and significant hardship" in relation to the ordinary incidents of prison life, but again does not designate any facts that show in what way the conditions of his confinement in segregated status were either "atypical" or a "significant hardship." The court will consider in the proper place the extent to which Mr. Bruns has asserted genuine issues of material fact in this case that might preclude summary judgment under the governing law. See Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Beyerbach, 49 F.3d at 1326; Hartnagel, 953 F.2d at 394.

## IV. LEGAL ANALYSIS

Defendants' motion for summary judgment invites the court to consider two questions. First, under Sandin v. Conner, —— U.S. ——, 115 S.Ct. 2293, does Mr. Bruns even state a due process claim based on his placement in administrative segregation, whether or not that segregation can in fact be considered "punitive"? Second, even if Mr. Bruns has stated a due process claim under governing law, are defendants entitled to qualified immunity from that claim, because their conduct did not violate clearly established constitutional principles? [1] The court will consider these questions in turn.

## A. Does Bruns Have A Due Process Claim?

### 1. The Sandin decision

Defendants assert that the first question posed by their motion for summary judgment, does Mr. Bruns state a due process claim at all based on his placement in administrative segregation, must be answered in the negative in light of the Supreme Court's decision in Sandin. In Sandin, the Supreme Court eschewed the methodology for considering due process claims formulated in Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), which had focused on whether a rule or policy of the state is cast in "language of an unmistakably mandatory character" such that incursion on liberty would not occur "absent specified substantive predicates." Sandin, —— U.S. at ——, 115 S.Ct. at 2298 (quoting Hewitt, 459 U.S. at 471–72, 103 S.Ct. at 871). The Court concluded that this methodology had improperly shifted attention away from the "nature" of the deprivation to a sifting or parsing of the language of prison policies. Id., 115 S.Ct. at 2299. This shift, the Court concluded, has had at least two undesirable effects: (1) "it creates disincentives for States to codify prison management procedures in the interest of uniform treatment," instead encouraging "scarcity" of regulations and "standardless discretion" to avoid the creation of liberty interests; and (2) it has led to the involvement of federal courts in the day-to-day management of prisons, thus squandering judicial resources to little benefit. Id. The Court

---

1. The court notes that due process claims are generally subjected to a two-part analysis: (1) is the asserted interest protected by the due process clause; and (2) if so, what process is due. Sanders v. Woodruff, 908 F.2d 310, 312 (8th Cir.1990); Tyler v. Black, 811 F.2d 424, 427 (8th Cir.1987), adopted in relevant part, 865 F.2d 181 (8th Cir. 1989) (en banc), cert. denied, 490 U.S. 1027, 109 S.Ct. 1760, 104 L.Ed.2d 196 (1989). Defendants here have moved for summary judgment on the first part of the analysis, but have not raised the second issue. Although the court considers this somewhat strange, in light of a record showing that Mr. Bruns received a number of notices and reviews of his status in keeping with Iowa Department of Corrections policy, it will not address whether the process actually provided Mr. Bruns was all that was due. The court will instead consider the issues on defendants' motion for summary judgment as defendants have framed them.

therefore announced a "return to the due process principles we believe were correctly established and applied in *Wolff* [*v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974),] and *Meachum* [*v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) ]." The Court clarified the meaning of this return to former principles:

> Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin,* —— U.S. at ——, 115 S.Ct. at 2300 (internal citations omitted).

Turning to the specific case before it, the Court noted that it was considering restraints on the freedom of a convicted prisoner, not restraints on a pretrial detainee or a free citizen properly subjected to state control, as in an educational situation. *Id.* at ——, 115 S.Ct. at 2300–01 (distinguishing *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)). The Court therefore rejected the notion that any state action taken against a convicted prisoner for a punitive reason encroaches upon a liberty interest under the due process clause even in the absence of any state regulation. *Id.* at ——, 115 S.Ct. at 2300. Rather, the Court concluded that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Id.* at ——, 115 S.Ct. at 2301.

The Court next looked at the "nature" of the deprivation imposed on a prisoner by his segregation where the prisoner asserted that he had been deprived of due process by placement in punitive segregation without being allowed to present witnesses in defense of his alleged violation of prison rules. The Court found that the deprivation in that case, although "concededly punitive," did not present "a dramatic departure from the basic conditions of Conner's indeterminate [life] sentence." *Id.* at ——, 115 S.Ct. at 2301. The Court rejected the plaintiff's arguments that solitary confinement automatically triggers due process protection as based on "dicta." *Id.* The Court then held that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* The Court's rationale for this conclusion is particularly important in the present case:

> The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody.

*Id.* The court found that confinement in punitive status for thirty days did not differ materially in nature from placement in "totally discretionary confinement" in either duration or degree of restriction, and therefore worked no "major disruption" in the prisoner's environment. *Id.* Finally, the Court held that neither the due process clause itself nor any state prison regulation in question afforded the inmate a protected liberty interest entitling him to the procedural protections set forth in *Wolff. Id.* at ——, 115 S.Ct. at 2302.

### 2. *Sandin's import for prisoner due process claims*

It appears to this court that *Sandin* overrules the holding of the Eighth Circuit Court of Appeals that inmates have a liberty interest in not being placed in special conditions of confinement for disciplinary reasons. *See, e.g., Pletka v. Nix,* 957 F.2d 1480, 1484 (8th Cir.1992). However, the Eighth Circuit Court of Appeals has had but one opportunity to comment on the import of *Sandin* in a published decision.[2] In *Seltzer–Bey v. Delo,*

---

**2.** In an unpublished decision, *Rodden v. Delo,* 72 F.3d 133, 1995 WL 754103 (table), (8th Cir. 1995), the court held that an inmate's due process complaint arising from placement in "administrative segregation," as the result of his conduct during a riot, and the process he re-

66 F.3d 961, 964 (8th Cir.1995), the court cited *Sandin* to conclude that an inmate who had directed the court's attention to no regulation or statute creating a liberty interest in remaining in general population rather than being placed in a strip-search cell, allegedly as a form of punishment, had stated no due process claim. *Seltzer–Bey*, 66 F.3d at 964. Furthermore, the court held that the due process clause itself did not give the inmate such an interest upon which to base such a claim. *Id.*

The import of *Sandin* for prisoner claims of due process violations based on placement in punitive or administrative segregation found by the Eighth Circuit Court of Appeals is mirrored in appellate decisions from other circuits. Indeed, it appears that following *Sandin* a discretionary, administrative program will rarely, if ever, create a protected liberty interest. Pointing to the *Sandin* Court's statement that a prisoner's placement in segregated confinement "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest," the Fifth Circuit Court of Appeals stated that after *Sandin*, "the ambit of [prisoner's] potential Fourteenth Amendment due process liberty claims has been dramatically narrowed." *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996). In *Orellana*, the Fifth Circuit Court of Appeals stated that "[i]t is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional liberty status." *Id.* at 31–32; *see also Rimmer–Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir.1995) (holding that no liberty interest is implicated by placement in administrative segregation).

In *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995), the Fifth Circuit Court of Appeals again considered the impact of *Sandin* on due process claims of prisoners based on placement in administrative segregation. Instead of simply relying on its broad conclu-

sion in *Orellana*, the court identified the narrow range of due process claims based upon administrative segregation which might be viable after *Sandin*. In *Luken*, the court concluded that "*Sandin* establishes that [an inmate's] administrative segregation, *without more*, does not constitute a deprivation of a constitutionally cognizable liberty interest." *Luken*, 71 F.3d at 193 (emphasis added). The *Luken* court found that there was no "more" in alleged loss of good time credits or loss of a prison job as the result of placement in administrative segregation sufficient to create a liberty interest and invoke due process protections. *Id.* at 193–94.

The Supreme Court's decision in *Sandin* has also generally been held to bar due process claims based on placement in *punitive* segregation in all but the most unusual circumstances. In *Williams v. Ramos*, 71 F.3d 1246 (7th Cir.1995), the Seventh Circuit Court of Appeals was presented with a case it found "virtually indistinguishable from *Sandin.*" *Williams*, 71 F.3d at 1249, 1995 WL 726545, *2. The appellate court noted that *Sandin* had relied on three factors in determining that the inmate in question possessed no liberty interest in not being placed in disciplinary segregation:

> 1) disciplinary segregation was little different from discretionary forms of segregation; 2) comparison between Conner's confinement and conditions in the general population showed that Conner suffered no "major disruption in his environment"; and 3) the length of Conner's sentence was not affected.

*Williams*, 71 F.3d at 1249 (citing *Sandin*, —— U.S. at ——, 115 S.Ct. at 2301). Similarly, in the case before it, the Seventh Circuit Court of Appeals found that an inmate had not identified "harms greatly exceed[ing] what one could expect from prison life generally" in the inmate's complaint that he was locked in a closed-front cell for twenty-four hours a day, was not allowed to participate in activities available to the general population or non-segregated inmates housed in the same area, handcuffed whenever he left his cell,

ceived during that placement, was "foreclosed by *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 2302, 132 L.Ed.2d 418 (1995) (in a case such as

this due process rights are not implicated in proceedings leading to disciplinary segrega-

and denied contact with other inmates or staff. *Id.; and compare Gotcher v. Wood,* 66 F.3d 1097, 1101 (9th Cir.1995) (remanding grant of defendant's motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6) for determination of whether placement in disciplinary segregation imposed "atypical and significant" hardship on prisoner sufficient to create a liberty interest, because the record on a motion to dismiss was insufficiently developed).

### 3. *Plaintiff's due process claim*

■ Mr. Bruns's special confinement here was at least nominally "administrative," rather than "punitive."[3] It appears clear that after *Sandin,* merely "administrative" segregation, without more, does not give rise to due process claims. *Luken,* 71 F.3d at 193. The "more" Mr. Bruns appears to rely on in this case is that he was being "punished" for refusing to assist in the investigation of the assault on inmate Hernandez. The answer to this assertion is *Sandin'*s requirement that the focus of analysis of a due process claim must be the "nature" of the deprivation, by which the *Sandin* Court clearly meant the extent of the restraints on free-

dom as compared to typical prison conditions. *Sandin,* — U.S. at —, 115 S.Ct. at 2300. There were no restraints placed upon Mr. Bruns's freedom that exceeded those imposed solely for "administrative" reasons, such as pursuing an investigation of the Hernandez assault and managing an inmate whose conduct and attitude were impeding that investigation in such a way that his part in the misconduct could not be determined, *Hewitt,* 459 U.S. at 468, 103 S.Ct. at 869 ("administrative" segregation includes segregation undertaken to facilitate investigation of misconduct), and the nature and extent of the confinement were rationally related to those legitimate ends. *Bell,* 441 U.S. at 538–39, 99 S.Ct. at 1874. Thus, the court concludes that the "administrative" segregation to which Mr. Bruns was subjected did not give rise to a due process violation under *Sandin.*

■ Even if Mr. Bruns's segregation was "punitive," however, the court finds that Mr. Bruns cannot assert a due process claim based on that confinement after *Sandin,* because his placement in segregated confine-

---

tion)." *Rodden,* 72 F.3d 133, 1995 WL 754103, at *1.

**3.** On the record presented here, the court concludes that whether Mr. Bruns's confinement in segregated status was "administrative" or "punitive" will not be dispositive of defendants' motion for summary judgment. However, the court notes that the Eighth Circuit Court of Appeals, when distinguishing between "administrative" and "punitive" segregation, quoted at length from *Bell v. Wolfish,* 441 U.S. 520, 538–39, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979):

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of ... detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitu-

tionally be inflicted upon [inmates]. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

*Jones v. Mabry,* 723 F.2d 590, 594 (8th Cir.1983) (quoting *Bell v. Wolfish,* 441 U.S. 520, 538–39, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979)). In *Bell,* the court also described tests traditionally applied to determine whether a governmental act is punitive in nature, including "whether its operation will promote the traditional aims of punishment—retribution and deterrence." *Bell,* 441 U.S. at 537–38, 99 S.Ct. at 1873.

The courts have also distinguished between "punitive segregation, including punitive isolation which is imposed by way of punishment for past misconduct," and "administrative segregation[, which] is not punitive and ... looks to the present and the future rather than to the past." *Jones,* 723 F.2d at 594; *Kelly v. Brewer,* 525 F.2d 394, 399 (8th Cir.1975). Administrative segregation may be undertaken to "protect the prisoner's safety, to protect other inmates from a particular prisoner, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer." *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). It may also be undertaken to isolate a prisoner pending investigation of misconduct charges against him to protect possible witnesses from coercion or harm. *Id.* at 473, 103 S.Ct. at 872.

ment "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin*, —— U.S. at ——, 115 S.Ct. at 2301. Mr. Bruns has not identified any way in which his assertedly "punitive" status for ninety days differed materially in nature from placement in "totally discretionary confinement," such as "administrative" segregation, in either duration or degree of restriction, and therefore the court cannot find that the confinement worked a "major disruption" in Mr. Bruns's environment. *Id.* Mr. Bruns has identified no state prison regulation which would afford him a protected liberty interest entitling him to the procedural protections set forth in *Wolff. Id.* at ——, 115 S.Ct. at 2302. Nor has he identified any facts indicating that the length of his "life" sentence was affected by the confinement. *Id.; see also Williams*, 71 F.3d at 1249 (citing *Sandin*, —— U.S. at ——, 115 S.Ct. at 2301); *Orellana*, 65 F.3d at 31–32 (*Sandin* likely means that only confinements that affect the duration of the sentence will impinge on a liberty interest and invoke due process rights). Even if the confinement was punitive, the court concludes that Mr. Bruns's due process claim is foreclosed by *Sandin. Seltzer–Bey*, 66 F.3d at 964.

Mr. Bruns has failed to establish a genuine issue of *material* fact as to whether his confinement was "punitive" or "administrative." Under the governing law of *Sandin* and its progeny, and the undisputed fact that there was no difference in the "nature" of Mr. Bruns's confinement if "punitive" rather than "administrative," whether his confinement was one or the other will not "affect the outcome of the suit under the governing law," and therefore cannot "properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 394. Under *Sandin*, it is the nature of the deprivation worked by the segregation as compared to ordinary prison conditions, not whether the segregation was "punitive" or "administrative," that is determinative of whether a due process claim can be mounted. *Sandin*, —— U.S. at ——, 115 S.Ct. at 2300.

Furthermore, Mr. Bruns has failed to establish a genuine issue of *material* fact that the nature of his confinement was "atypical" or imposed a "significant hardship." Although Mr. Bruns seems to suggest that he was subjected to a "significant hardship" by being compelled to choose between segregation or cooperation, and the risks he asserts he might thereby incur, Mr. Bruns has failed to establish any difference between his segregation and "administrative" segregation, which the Supreme Court has recognized is not "atypical" or a "significant hardship" as compared to the ordinary conditions of prison life. *Sandin*, —— U.S. at ——, 115 S.Ct. at 2300–02. Thus, on this second factual dispute, Mr. Bruns has failed to assert a genuine issue of material fact under governing law that precludes summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 394.

Defendants, on the other hand, have demonstrated that there is no genuine issue of material fact under the governing law found in the *Sandin* decision. *Hartnagel*, 953 F.2d at 394, 395 (defendants, as movants for summary judgment, bear "the initial responsibility [under *Fed.R.Civ.P.* 56(c) ] of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue."). Defendants have also demonstrated that, under the *Sandin* decision, Mr. Bruns cannot make a showing of a deprivation of a liberty interest, an essential element of Mr. Bruns's due process claim, and therefore defendants are "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553 (if party opposing summary judgment fails to make a sufficient showing of an essential element of a claim with respect to which he or she has the burden of proof, then the defendants are entitled to summary judgment); *Woodsmith*, 904 F.2d at 1247 (same). The court will therefore grant defendants' motion for summary judgment.

### B. Are Defendants Entitled To Qualified Immunity?

In the alternative, the court concludes that defendants' motion for summary judg-

ment should be granted on the ground that defendants are entitled to qualified immunity. The standard for qualified immunity is that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Bills v. Dahm,* 32 F.3d 333, 334 (8th Cir.1994); *Givens v. Jones,* 900 F.2d 1229, 1231–32 (8th Cir.1990) (quoting *Harlow* ); *Gorra v. Hanson,* 880 F.2d 95, 97 (8th Cir.1989) ("A law enforcement officer is shielded by qualified immunity from civil liability if the officer '[did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' " quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738; *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

■ "[T]o be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bills,* 32 F.3d at 335; *Johnson–El v. Schoemehl,* 878 F.2d 1043, 1048 (8th Cir.1989); *See also Anderson v. Creighton,* 483 U.S. at 640–41, 107 S.Ct. at 3039. The shield of qualified immunity is breached if "the unlawfulness of the action [is] apparent in light of pre-existing law." *Bills,* 32 F.3d at 334–35. Because the *Sandin* decision was handed down after the conduct complained of here occurred, it cannot, of course, establish qualified immunity in this case, because it was not *pre-existing* law. *Id.*

■■ The test for qualified immunity at the summary judgment stage of a proceeding is an objective one: The plaintiff must demonstrate that the law is clearly established and the defendant then bears the burden of showing that his conduct either does not violate plaintiff's rights or that there were extraordinary circumstances and that the defendant neither knew nor should have known of the relevant legal standard. *Johnson–El,* 878 F.2d at 1048. If the plaintiff can show that the defendant's conduct violated clearly established law, "then the defendant, as the movant for summary judgment, must demonstrate that no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions." *Cross v. City of Des Moines,* 965 F.2d 629, 632 (8th Cir.1992) (quoting *Salmon v. Schwarz,* 948 F.2d 1131, 1136 (10th Cir.1991)); *Johnson–El,* 878 F.2d at 1048 ("The defendant bears the burden of proof with respect to all other elements of the defense. . . .").

■ Even if *Hewitt* had been overruled by *Sandin,* which it was not, *see Sandin,* —— U.S. at ——, 115 S.Ct. at 2300 n. 5 (noting that rejecting *Hewitt* 's methodology did not require overruling its holding); *Zarnes v. Rhodes,* 64 F.3d 285, 291 (7th Cir.1995) (noting that *Sandin* does not undermine this conclusion of *Hewitt,* only its analysis), the proper "pre-existing" law against which to measure the conduct of the prison officials in this case would be *Hewitt. Bills,* 32 F.3d at 334–35 (qualified immunity depends on objectively reasonable belief actions are proper under pre-existing law). In *Hewitt,* the Supreme Court held that placement of a convicted prisoner in administrative segregation does not require that the government first provide due process protections. *Hewitt,* 459 U.S. at 467–68, 103 S.Ct. at 869. Furthermore, in *Hewitt,* the Court held that an inmate may be placed in administrative segregation during an investigation of possible wrongdoing. *Id.* at 468, 103 S.Ct. at 869. Thus, under the pre-existing law of *Hewitt,* it was objectively reasonable for prison officials to believe that segregating Mr. Bruns in order to conduct an investigation of the Hernandez assault was placing Mr. Bruns in "administrative" rather than "punitive" confinement. *Id.* Furthermore, the court concludes that under *Hewitt,* Mr. Bruns has failed to show that he had a clearly established right that was violated when he was placed in "administrative" segregation. *Johnson–El,* 878 F.2d at 1048 (plaintiff bears burden of generating genuine issue of material fact of violation of clearly established right). Bruns received notice before he was placed in administrative segregation even though none was required under *Hewitt,*

*Hewitt,* 459 U.S. at 467–68, 103 S.Ct. at 869, as well as regular reviews of his continuation in that segregated status. Thus, it was objectively reasonable for prison officials to believe that Mr. Bruns had received all the process he was due. *Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995) (not addressing the question posed by *Sandin* of whether New York regulations afforded inmates a liberty interests in remaining free from administrative segregation, because the court held that it was objectively reasonable for prison officials to believe that the inmate in question had received all the process he was due).

Defendants' motion for summary judgment is therefore also granted on the alternative ground that defendants are entitled to qualified immunity. *Johnson–El,* 878 F.2d at 1048 (test for qualified immunity at summary judgment stage).

### V. CONCLUSION

Having carefully considered the impact of the recent Supreme Court decision in *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, on the plaintiff prisoner's due process claims arising from placement and continuation in segregated status, the court concludes that defendants' motion for summary judgment must be granted. The plaintiff has failed to establish that under *Sandin* whether his segregation was "punitive" or "administrative" is dispositive. There is nothing "more" than "administrative" segregation present in this case in the "nature" of the deprivation to which the plaintiff was subjected, because there were no restraints placed upon the plaintiff's freedom that exceeded those properly imposed solely for "administrative" reasons. Nor if the plaintiff's segregation was "punitive," did it present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. Thus, whether the plaintiff's confinement was "administrative" or "punitive" will not affect the outcome of the suit under the governing law, and therefore cannot properly preclude the entry of summary judgment. Furthermore, the plaintiff has failed to establish a genuine issue of *material* fact that the nature of his confinement was "atypical" or imposed a "significant hardship," because he has failed to establish any difference between his segregation and "administrative" segregation, which the Supreme Court has recognized is not "atypical" or a "significant hardship" as compared to the ordinary conditions of prison life. Because the plaintiff cannot establish an essential element of his due process claim, deprivation of a liberty interest, defendants are entitled to summary judgment.

In the alternative, the court concludes that defendants are entitled to summary judgment on the ground that they have qualified immunity to the plaintiff's claims. Under pre-existing law, it was objectively reasonable for defendants to believe that they had imposed only "administrative" segregation on the plaintiff while conducting an investigation of an assault the plaintiff had witnessed and to believe that the plaintiff had received all the process due him as a result of placement in that status.

Summary judgment is granted in favor of defendants and this matter is dismissed in its entirety.

**IT IS SO ORDERED.**