Terry CHRISTIANSON, Plaintiff,

v.

Harold CLARKE, et al., Defendants.

No. 4:CV 95–3303.

United States District Court, D. Nebraska.

June 26, 1996.

Terry Christianson, pro se.

Terri M. Weeks, Assistant Attorney General, Lincoln, NE, for Defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Terry Christianson (Christianson) is a Nebraska prisoner confined at the Lincoln Correctional Center. Christianson brings this complaint pursuant 42 U.S.C. § 1983 claiming his Fourteenth Amendment due process rights were violated by prison officials when they placed him on immediate segregation, administrative confinement and protective custody between November 24, 1993 and March 4, 1994. More specifically, Christianson claims the prison officials provided no evidentiary support or factual basis for the reclassifications. Christianson seeks declaratory relief, damages, and attorney's fees.

Pending before the court is the Defendants' motion to dismiss (filing 20) asserting that the complaint fails to state a claim upon which relief can be granted, and that all Defendants have qualified immunity from damages in their personal capacities.

### Background [1]

On November 24, 1993 at approximately 7:45 a.m., Christianson alleges he was escorted to the turnkey area of the Nebraska State Penitentiary (NSP) where he was strip searched and placed in a holding cell for six hours without explanation. (Filing 7, ¶¶ 14–15.) At approximately 1:40 p.m. that same day Christianson was given notice that he was being placed on immediate segregation status pending investigation of an assault allegedly involving Christianson and another inmate and "for the good order of the institution." (Filing 7, ¶ 17, Ex. 1.) Later that afternoon Christianson was taken to a Control Unit where defendants Marshall and Larson notified him that an immediate segregation review had been conducted, and they had determined he should remain on immediate segregation status pending the investigation into Christianson's alleged involvement in the assault. (Filing 7, ¶ 18, Ex. 2.) Immediate segregation is a form of administrative segregation entailing separation of an inmate from the general population of a corrections facility. (Filing 7, ¶ 19.)

On December 6, 1993 Christianson was interviewed by Captain Dallen Johnson regarding the alleged assault. Christianson denied his involvement in any such assault. (Filing 7, ¶ 20.)

On December 7, 1993 Christianson received written notice that a classification hearing would be held on December 9, 1993 to determine his confinement status. (Filing 7, Ex. 3.) The notice contained no written factual basis.

The December 9, 1993 hearing was conducted by defendants Schmuecker and Marshall. (Filing 7, ¶ 22.) Christianson made written requests for representation and for a continuance of the hearing "until such time as I am able to present a viable defense to clear and formal allegations." (Filing 7, ¶ 22, Ex. 4.) Both requests were denied. Christianson was informed by Schmuecker and Marshall that prison officials "were not in possession of any type of evidence" to indicate Christianson had committed an assault but "it was[ ] believed plaintiff had assualted [sic] another inmate." (Filing 7, ¶ 23.) Marshall and Larson recommended that Christianson be placed on administrative confinement status for a period of ninety days. After the hearing Christianson received notice that he had been placed on administrative confinement status. That notice did not contain a specific factual basis for the classification. (Filing 7, ¶ 25, Ex. 5.) According to the DCS Classification Manual and AR 201.5, inmates are to be given a written factual basis for administrative action taken. (Filing 7, ¶ 26.)

Christianson filed written notice of appeal on December 13, 1993 (filing 7, ex. 6) and on December 17, 1993 Christianson received written notice his appeal would be heard before the DCS Director's Subcommittee on December 21, 1993. (Filing 7, Ex. 7.)

1. Christianson submitted twenty-one exhibits with his amended complaint (filing 7) and has incorporated those exhibits by reference. I shall therefore construe those exhibits as part of the complaint for this motion to dismiss.

Christianson appeared before the Director's Subcommittee, further inquired into the nature of the allegations, and reasserted that he was not involved in any assault. (Filing 7, ¶ 30.) At that hearing Christianson's classification was reviewed, and the next day, December 22, he was informed he was going to be placed on immediate segregation pending completion of the internal investigation of the November 24 assault.

On December 27, 1993 Christianson was given notice a hearing would be held December 29, 1993 regarding his possible transfer to involuntary protective custody. (Filing 7, Ex. 11.) At that hearing Christianson was informed by defendant Schmuecker that "the administration has received numerous verbal and written threats" to Christianson's safety and well-being. (Filing 7, Ex. 15 at 3.) After that hearing Christianson received written notice from Defendant Britton that "[d]ue to staff concerns stemming from the incident on November 24, 1993, by classification action, you have been placed on Involuntary Protective Custody with a review in 90 days." (Filing 7, Ex. 14.) Christianson appealed the decision of his placement on protective custody status. (Filing 7, Ex. 15.)

On January 18, 1994 Christianson's classification was reviewed by defendants Schmuecker and Marshall at a hearing attended by Christianson. Schmuecker and Marshall recommended no change in status. (Filing 7, Ex. 16.) The recommendation was reviewed and approved by defendant Hopkins. (Id.)

On January 22, 1994 Christianson received Defendant Clarke's decision regarding Christianson's appeal of his classification status. (Filing 7, Ex. 17.) In that letter Clarke informed Christianson the classification decision was based on "the belief your safety may be in jeopardy in general population due to the possibility of your involvement, or the belief by other inmates of your involvement" in the November 24, 1993 assault. (Id.)

On February 15, 1994, Housing Unit Case Manager Russel Schuster prepared a reclassification action form for the DCS Director's Subcommittee recommending Christianson be removed from involuntary protective custody status and placed either in the Lincoln Correctional Center (LCC) general population, or in the NSP general population. (Filing 7, ¶ 44, Ex. 18.) On February 22, 1994, a segregation status review was conducted by personnel of Housing Unit # 4 who recommended Christianson be removed from protective custody and placed in either LCC or NSP general population. (Filing 1, ¶ 45.)

On March 1, 1994 Christianson received written notice that a hearing would be conducted before the DCS Director's Subcommittee on March 4, 1994 concerning his removal from involuntary protective custody. (Filing 1, ¶ 46; Filing 7, Ex. 20.) After the March 4, 1994 hearing Christianson was assigned to the general population of LCC. (Filing 1, ¶ 47; Filing 7, Ex. 21.)

### Discussion

 In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), allegations in the complaint must be viewed in the light most favorable to the plaintiff. *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). When a party is proceeding pro se, as in the instant action, the court has an obligation to liberally construe the allegations. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

The thrust of Christianson's claim is that his due process rights were violated when he was placed on immediate segregation on November 24, 1993, and when he was subsequently placed on administrative confinement on December 9, 1993, and on protective custody on December 30, 1993.[2] In order to

---

2. For purposes of this discussion the terms immediate segregation, administrative confinement, and protective custody will collectively be referred to as administrative confinement or administrative segregation. While the court recognizes the differences between the three segregation terms as used in Christianson's complaint and explained therein (filing 7, ¶¶ 19, 24, ex. 7), the use of the collective term does not affect the legal analysis as all three terms are a form of

succeed on his claim, Christianson's complaint must include factual allegations that he had a liberty interest, and that he was denied that liberty interest without due process. Even after liberally construing Christianson's complaint, I find that he has failed state a cognizable claim under § 1983, and his complaint must be dismissed.

### Liberty Interest

■ The Supreme Court recently made clear in *Sandin v. Conner*, —— U.S. ——, ——, 115 S.Ct. 2293, 2300–02, 132 L.Ed.2d 418 (1995) that the Due Process Clause itself does not protect any liberty interest in remaining free from administrative segregation or protective custody. *See also Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). An alternative route to due process protection is through state created liberty interests. However, "these interests will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, —— U.S. at ——, 115 S.Ct. at 2300. The Eighth Circuit has expounded that state created liberty interests are those "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." *Moorman v. Thalacker*, 83 F.3d 970, 972 (8th Cir.1996) (citing *Sandin*, —— U.S. at ——, 115 S.Ct. at 2300–01) (15 days of highest level of disciplinary confinement, and 107 days in progressively less restricted disciplinary detention not a dramatic departure from ordinary incidents of prison life).

■ Courts are now directed to focus on the nature of the deprivation imposed in determining whether a state created liberty interest is implicated and are not to focus on the mandatory or discretionary language of prison regulations or statutes as was previously required. *Sandin*, —— U.S. at ——, 115 S.Ct. at 2298–99.[3] In *Sandin* the Court

held that state law will not be found to create a liberty interest in avoiding short periods of confinement in disciplinary segregation where the conditions of confinement "mirrored those conditions imposed upon inmates in administrative segregation and protective custody." *Id.* at ——, 115 S.Ct. at 2301. Implicit in this holding is that nonpunitive administrative segregation, without more, does not amount to an "atypical and significant hardship" that rises to the level of a protected liberty interest. *Id.; See Pichardo v. Kinker*, 73 F.3d 612 (5th Cir.1996) (dismissing as frivolous inmate's complaint alleging confinement in administrative segregation violates due process); *Luken v. Scott*, 71 F.3d 192 (5th Cir.1995) ("[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest."); *Rimmer–Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir.1995) (same); *Bruns v. Halford*, 913 F.Supp. 1295 (N.D.Iowa 1996) (a discretionary administrative program will rarely if ever create a protected liberty interest).

The inmate in *Sandin* was placed in punitive segregation for thirty days without an opportunity to present witnesses at a hearing. The inmate did not face the possibility of losing any good time credit, nor was his release date affected by the punitive segregation. *Id.* ——, 115 S.Ct. at 2301–02. Put simply, there was no demonstrated hardship on the inmate in *Sandin* outside the ordinary realm of what is to be expected of prison life.

■ Under the principles announced in *Sandin*, Christianson has not alleged facts sufficient to implicate a state created liberty interest. Christianson has not alleged any "atypical and significant hardship" resulting from his confinement in immediate segregation, administrative segregation or protective custody that presents a "dramatic departure" from the basic conditions expected of prison life. Although Christianson alleges that his placement in administrative segregation resulted in the revocation of certain

---

administrative segregated confinement that do not rise to the level of disciplinary confinement.

**3.** While *Sandin* clearly rejects the methodology used in *Hewitt v. Helms* to determine whether a

state has created a protected liberty interest, the holding of *Hewitt v. Helms* still stands. *Sandin*, —— U.S. at —— n. 5, 115 S.Ct. at 2300 n. 5.

privileges such as "free access to the law library, circulating library, yard, central dining, canteen and basic other freedoms shared by the inmate population as a whole" (filing 7, ¶ 19) the temporary denial of these privileges do not present the "type of atypical, significant deprivations in which a state might conceivably create a liberty interest." *Id.* at ——, 115 S.Ct. at 2301; *See Hewitt v. Helms,* 459 U.S. at 460, 103 S.Ct. at 864 ("[A]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."); *Pichardo,* 73 F.3d at 612 (administrative segregation is "an incident to the ordinary life of a prisoner."); *See also Moorman,* 83 F.3d 970.

■ Christianson has not alleged that he faced the possibility of losing good time credits or that his release date may be affected by the administrative segregation. Christianson has not pointed to any state statute or prison regulation that may have created a liberty interest. An allegation by an inmate that his due process rights were violated by virtue of his placement in administrative segregation, without more, does not implicate a liberty interest. *See Pichardo,* 73 F.3d at 613 & n. 2.

### The Process Due to Christianson

■ Even assuming Christianson has alleged a liberty interest, a review of Christianson's complaint and the exhibits submitted therewith reveals he received all the process that was due him under the Constitution. Christianson's complaint alleges that prison officials failed to follow prison regulations concerning the implementation of administrative segregation on an inmate. Specifically, Christianson alleges that the classification actions all failed to sufficiently detail the reasons for his administrative confinement pursuant to the procedures set forth in prison regulation AR 201.4–5. However, for purposes of administratively segregating an inmate, the extent of the process required by the Constitution is to "engage only in an informal, nonadversary review of the information supporting [the inmate's] administrative confinement, including whatever statement [the inmate] wished

to submit, within a reasonable time after confining him to administrative segregation." *Hewitt v. Helms,* 459 U.S. at 472, 103 S.Ct. at 872.

It is apparent on the face of Christianson's complaint that he was afforded a hearing before each classification decision, that he was afforded notice prior to those hearings, and that he was given the opportunity to make a statement at each of the hearings. Although Christianson alleges he was not informed of the factual basis for his confinement status, he also alleges on several occasions that his confinement status was premised upon the investigation of the November 24, 1993 assault allegedly involving Christianson and another inmate. (Filing 7, Exs. 1, 2, 4, 12, 14, 15, 17, 18.)

Christianson concedes that he was informed on November 24, 1993 he was being placed on segregated confinement for the following reasons: (1) a hearing is pending before a disciplinary committee; (2) an investigation is pending regarding an alleged violation of the Code of Offenses; (3) a classification hearing is pending; and (4) pending investigation of an incident that occurred on the yard this date (November 24, 1993) and for the good order and well-being of the institution. (Filing 7, Ex. 2.) Christianson then had an immediate segregation review wherein the hearing officers noted that an investigation into his involvement in the November 24, 1993 assault was ongoing.

Christianson also had his placement reviewed on other occasions with each review preceded by appropriate notice. On December 9, 1993 Christianson's status was reviewed, and he was advised he was being placed on administrative confinement. (Filing 7, Ex. 5.) Christianson was present at the December 9, 1993 hearing, and he requested a continuance of the hearing in order to prepare a defense. (Filing 7, ¶ 22, Ex. 4.) Christianson appealed the December 9, 1993 classification decision. (Filing 7, ¶ 28, Ex. 6.) On December 21, 1993 Christianson appeared at a hearing before the Director's Subcommittee where his classification was reviewed and where he told the committee he had not assaulted anyone on November 24, 1993. (Filing 7, ¶ 30, Ex. 10.) On December

22, 1993 Christianson was notified that he was going to be placed on immediate segregation pending completion of the internal investigation of the November 24, 1993 assault. (Filing 7, Ex. 10.)

On December 29, 1993 Christianson appeared before the control unit classification committee where his classification was reviewed and where he again reasserted he had not assaulted anyone. (Filing 7, ¶ 37.) During the classification hearing on December 29, 1993 Christianson was informed by defendant Schmuecker "that the administration has received numerous verbal and written threats" to Christianson's safety and well-being. (Filing 7, Ex. 15 at 3.) After the classification hearing, Christianson received written notification from the hearing officers that he would be placed on involuntary protective custody. Christianson appealed the classification determination and received a letter from defendant Clarke affirming the classification decision and explaining that "some information, particularly pertaining to other inmates, must remain confidential." (Filing 7, Ex. 17.)

After status reviews on February 15, 1994 and February 22, 1994, Christianson appeared before the Director's Subcommittee on March 4, 1994 where he was informed he would be removed from protective custody and assigned to general population of LCC.

Christianson's allegations do not amount to a claim that the administrative segregation was being "used as a pretext for [the] indefinite confinement" of Christianson. *Hewitt v. Helms*, 459 U.S. at 477 n. 9, 103 S.Ct. at 874 n. 9. Christianson's status was reviewed on several occasions as discussed above, and he was returned back into general population well before the ninety days imposed had expired.

## Qualified Immunity

■ Assuming Christianson's complaint were to implicate a protected liberty interest and assuming the process he received was deficient in some manner, alternatively I find that the defendants are entitled to qualified immunity from liability for damages in their individual capacities.

It was not clearly established that Christianson had a liberty interest in avoiding administrative segregation while prison officials conducted an investigation of misconduct and while threats by other inmates were being directed toward Christianson. *Hewitt v. Helms*, 459 U.S. at 473, 103 S.Ct. at 872 (reasonable to confine inmate to administrative segregation for safety of other inmates and prison officials while investigation into misconduct was ongoing). Nor was it clearly established that Christianson had a liberty interest in a full evidentiary hearing before he was placed in administrative segregation. *Hewitt v. Helms*, 459 U.S. at 476, 103 S.Ct. at 874 ("An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.").

Thus, it was objectively reasonable for prison officials to place Christianson on administrative segregation while investigating the November 24, 1993 assault. Even though a hearing was not required under *Hewitt v. Helms*, Christianson received a hearing before each classification decision where he was allowed to assert his innocence. Christianson was given notice prior to each classification decision and Christianson received written notification of each classification made. Christianson's status was reviewed several times, and he was allowed to appeal the decisions. Furthermore, threats were being made by other inmates against Christianson. This being true the motion to dismiss must be granted on qualified immunity grounds because a reasonable person standing in the shoes of the defendants would not have known that the conduct alleged in the complaint violated the law.

Accordingly,

IT IS ORDERED that:

1. Defendants' motion to dismiss (filing 20) is granted;

2. Judgment for dismissal with prejudice shall be entered by separate document.