Richard P. RIENHOLTZ, Plaintiff,

v.

Donal CAMPBELL, et al., Defendants.

No. 99–2148–D/V.

United States District Court,
W.D. Tennessee,
Western Division.

June 28, 1999.

Richard P. Rienholtz, Henning, TN, pro se.

## ORDER TO COMPLY WITH PLRA ORDER ASSESSING FILING FEE ORDER OF DISMISSAL ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH NOTICE OF APPELLATE FILING FEE AND ORDER IMPOSING SANCTIONS UNDER 28 U.S.C. § 1915(g)

DONALD, District Judge.

### I. *INTRODUCTION*

Plaintiff, Richard P. Rienholtz, Tennessee Department of Corrections (TDOC) registration number 94415, an inmate at West Tennessee State Prison Site 1 (WTSP)[1] in Henning, Tennessee, who was formerly confined at the Northwest Correctional Complex (NWCX) in Tiptonville, Tennessee, has filed this latest complaint[2] under 42 U.S.C. § 1983.

The Clerk shall record the defendants as Donal Campbell, Wayne Carpenter, John Dennison, James Dukes, Rodger Forrest, Ray Goodgine, Auzzie Harrell, Robert Henry, Alton Hesson, Tommy Mills, Fred Raney, and Shelia Roberts.

---

**1.** The word prison is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses. WTSP Site 1 was formerly named Cold Creek Correctional Facility (CCCF). WTSP Site 2, across the street from Site 1 in Henning, was previously designated as West Tennessee High Security Facility (WTHSF).

**2.** Rienholtz has previously filed two cases that were dismissed as frivolous:

1. *Rienholtz v. Tenn. Dept. of Corr.*, No. 94–1163 (W.D.Tenn. Aug. 25, 1994) (dismissing § 1983 complaint as frivolous under Eleventh Amendment and 28 U.S.C. § 1915(d)).

2. *Rienholtz v. Campbell*, No. 3:98–739 (M.D.Tenn. Aug. 19, 1998) (dismissing § 1983 complaint as frivolous under 28 U.S.C. § 1915(e)(2)(B)(ii)).

## II. ASSESSMENT OF FILING FEE

■ Under the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $150 required by 28 U.S.C. § 1914(a). The *in forma pauperis* statute, 28 U.S.C. § 1915(a) merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

■ In this case, plaintiff has not properly completed and submitted both an *in forma pauperis* affidavit and a prison trust fund account statement showing:

a. the average monthly deposits, and

b. the average monthly balance

for the six months prior to submission of the complaint, and

c. the account balance when the complaint was submitted.

Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is ORDERED that within thirty (30) days of the entry of this order the plaintiff properly complete and file both an *in forma pauperis* affidavit and a trust fund account statement showing the above amounts. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $150.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify plaintiff's name and the case number on the first page of this order.

If plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order.

If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

## III. ANALYSIS OF PLAINTIFF'S CLAIMS

Plaintiff is serving a six to forty-six year prison sentence in the custody of the

TDOC for felony escape, second degree murder, and attempted arson. He sues TDOC Commissioner Donal Campbell, NWCX Warden Fred Raney, NWCX Associate Warden James Dukes, NWCX Classification Coordinator Ray Goodgine, NWCX Counselor Shelia Roberts, NWCX School Principal Auzzie Harrell, NWCX Correctional Officer Rodger Forrest, WTSP Warden Alton Hesson, WTSP Associate Wardens Tommy Mills and Robert Henry, WTSP Fiscal Director Wayne Carpenter, and WTSP Classification Coordinator John Dennison.

This is yet another case involving a TDOC prison inmate who is attempting to abuse the grievance system and his right of access to the courts because he is dissatisfied with administrative decisions that are clearly within the discretion of prison officials. Rienholtz has spent some considerable time working in TDOC prison libraries, and has come to view his job as an inmate law clerk as a liberty interest. While confined at NWCX he learned that the NWCX administration had decided not to place a CD–Rom computerized legal research system in the prison law library, but to assign the equipment to prison staff. Contending that Commissioner Campbell had personally approved the placement of the system in the library and that the library's book collection had been allowed to decline in anticipation of the installation of the computerized system, Rienholtz proceeded to file numerous grievances complaining of the decision and attacking the motives and character of various prison staff who were either involved in the decision or had some relationship to the library and its operations. NWCX staff removed plaintiff from his law library position and transferred him to the Minimum Security Annex at WTSP Site 1. Plaintiff filed grievances regarding the transfer and loss of his job, of course asserting that the transfer and job termination interfered with his right of access to the courts. At WTSP he worked briefly in a manual labor position outside on the brush clearing crew, but then was assigned to a clerical position in the commissary. While work-ing there, he became dissatisfied with the manner in which WTSP staff operating the commissary paid inmates, scheduled inmate work shifts, and determined inmate work assignments. He proceeded to file a series of grievances telling WTSP officials how the commissary should be operated. WTSP staff thereafter conducted a security investigation, during which they confined him to involuntary administrative segregation for ten days and then terminated him from the commissary position. In essence, Hesson and the WTSP administration concluded that plaintiff was trying to run the prison, and they reassigned him to clarify who was in charge.

Plaintiff felt seriously affronted by this and responded with a prolix and rambling thirty-six page complaint to which he attached some sixty-one pages of exhibits, grievance documents, TDOC regulations, correspondence with various NWCX, WTSP, and TDOC officials, and three cassette tapes that he claims memorializes statements at various grievance and classification hearings. He claims the defendants have violated his First Amendment right of access to the courts and deprived him of due process, and he seeks compensatory and punitive damages.

■ Plaintiff has no liberty interest in assignment to a particular prison, to a particular prison job, or in freedom from segregation. In general, an inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification within that institution. *Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *Newell v. Brown,* 981 F.2d 880, 883 (6th Cir.1992); *Beard v. Livesay,* 798 F.2d 874, 876 (6th Cir.1986).

In *Wolff v. McDonnell,* 418 U.S. 539, 564–71, 94 S.Ct. 2963, 41 L.Ed.2d 935

(1974), the United States Supreme Court had identified the procedural requirements prison officials must adopt to satisfy due process when depriving a prisoner of various liberty interests, including deprivation of sentence credits and confinement to segregation. *Wolff* assumed the existence of a liberty interest requiring due process protection. In *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Court limited the *Wolff* requirements applicable to purely administrative, rather than punitive segregation, but broadened the scope of federal court authority over prison administration by recognizing that the mandatory language of state regulations could create liberty interests protected by due process requirements. Courts were required to consider whether "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State [or federal government] has created a protected liberty interest." *Hewitt,* 459 U.S. at 472, 103 S.Ct. 864. In *Sandin v. Conner,* 515 U.S. 472, 484–87, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), however, the Court rejected *Hewitt,* and much of the lower-court jurisprudence that relied on *Wolff.* Without explicitly overruling *Hewitt* itself, *Sandin* returned to the question left open in *Wolff,* 418 U.S. at 564–71, 94 S.Ct. 2963: whether inmates even have a liberty interest in freedom from segregation, punitive or administrative. The Court rejected *Hewitt*'s methodology and concluded that they do not.

> The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. *See also Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by

the Due Process Clause of its own force, see, e.g., *Vitek[ v. Jones,* 445 U.S. 480,] 493, 100 S.Ct. 1254, 63 L.Ed.2d 552 [ (1980) ] (transfer to mental hospital), and *Washington[ v. Harper,* 494 U.S. 210,] 221–222, 110 S.Ct. 1028, 108 L.Ed.2d 178 [ (1990) ] (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

> Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. Neither *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), nor *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), requires such a rule.... We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.... We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff.* The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.

*Sandin,* 515 U.S. at 483–84, 486, 487, 115 S.Ct. 2293 (footnotes and some citations omitted).

Sandin thus focuses not on the content of regulations, but on the "nature of the deprivation" visited upon the inmate. *Id.* at 481, 115 S.Ct. 2293. Absent "atypical and significant hardship," a change in the conditions of confinement simply does not inflict a cognizable injury that merits constitutional protection, regardless of the motivation of the official when making the change. *Id.* at 484–86, 115 S.Ct. 2293. Thus language in state laws or prison regulations no longer cre-

ates a liberty interest protected by the Due Process Clause. *Rimmer–Bey v. Brown,* 62 F.3d 789, 790–91 (6th Cir.1995). Rather, from now on, when analyzing due process claims federal courts look neither to state laws or regulations to ascertain whether they create a liberty interest in connection with a housing assignment, imposition of administrative or disciplinary segregation, reclassification, job assignment, or a prison transfer, nor to the subjective motives of prison officials for effecting such changes. Instead, the Court focuses on the nature of the deprivation itself.

> After [*Sandin* ], prisoners may no longer peruse state statutes and prison regulations searching for the grail of limited discretion. Instead, a prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 472, 115 S.Ct. at 2294 (emphasis added).

*Orellana v. Kyle,* 65 F.3d 29, 31 (5th Cir. 1995). According to *Orellana,* only deprivations that clearly impinge on the *duration* of confinement, will henceforth even possibly qualify for constitutional "liberty" status. *Id.* at 31–32.

■ The allegations that plaintiff was terminated from his prison law library position, transferred from NWCX to WTSP Site 1, and terminated from his commissary clerical job do not amount to an allegation of an "atypical and significant hardship" "in relation to the ordinary incidents of prison life" and thus do not allege the deprivation of any liberty interest. *See, e.g., Mackey v. Dyke,* 111 F.3d 460, 462–63 (6th Cir.1997). Nor does any dissatisfaction plaintiff experiences with his job assignment or the perception of prison officials regarding his security status cause that dissatisfaction to constitute an atypical and significant hardship.

> [A]n inmate's "subjective expectations [are not] dispositive of the liberty interest analysis." *Sandin,* 515 U.S. at 486 n. 9, 115 S.Ct. 2293. Rather, the *Sandin* standard invokes a comparison of the

punitive restraint with what an inmate can expect from prison life generally to determine whether there has resulted an "atypical, significant deprivation," *Williams v. Ramos,* 71 F.3d 1246, 1249 (7th Cir.1995), which presents "dramatic departures from the basic conditions and ordinary incidents of prison sentences." *Moorman v. Thalacker,* 83 F.3d 970, 972 (8th Cir.1996).

*Wilson v. Harper,* 949 F.Supp. 714, 721 (N.D.Iowa 1996) (citation form updated).

As plaintiff has not alleged any atypical and significant hardship, he has failed to allege the deprivation of a federally recognized liberty interest, and is not entitled to any of the procedural protections enunciated in *Wolff* or its progeny. He has no due process claim.

■ As is also clear under *Sandin,* any violation of TDOC procedural regulations in classifying plaintiff or assigning him to a particular prison does not violate his due process rights. Even before *Sandin,* it was clear that the scope of "the procedural due process required before one may be deprived of a liberty interest is governed by federal constitutional law and not state law." *Black v. Parke,* 4 F.3d 442, 447 (6th Cir.1993). Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures·is not a constitutional violation. *Hewitt,* 459 U.S. at 471, 103 S.Ct. 864; *Levin v. Childers,* 101 F.3d 44, 46 (6th Cir.1996) ("there is a fundamental logical flaw in viewing the process as a substantive end in itself"); *Harrill v. Blount County, TN,* 55 F.3d 1123, 1125 (6th Cir. 1995) (state law cannot create a federal constitutional right); *Spruytte v. Walters,* 753 F.2d 498, 508 (6th Cir.1985) (violation of state law does not by itself constitute deprivation of due process). Thus even before *Sandin,* use of mandatory language in mere procedural regulations did not create any substantive liberty interest. *See McLaurin v. Morton,* 48 F.3d 944, 947 (6th Cir.1995). After *Sandin,* it is even clearer that mandatory language in prison regulations does not create a liberty interest

protected by the Due Process Clause. *Rimmer–Bey,* 62 F.3d at 790–91. Thus, to the extent that the complaint should be construed as asserting that the defendants did not comply with TDOC, NWCX, or WTSP regulations in connection with his job terminations, transfer, or temporary confinement to administrative segregation, plaintiff has not suffered any deprivation of due process because of such noncompliance.

▮ Plaintiff's First Amendment court-access claims based on the handling of his numerous grievances are also without merit. It is true that a prisoner has the right, protected by the First Amendment, "to petition the Government for a redress of grievances." The scope of this right in relation to prisoners has been enunciated in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and its progeny. According to that body of caselaw, the scope of this right for prisoners is limited to filing cases in court, however, not in filing grievances.

▮ There is no constitutional right to file prison grievances. *See, e.g., Corn v. Lewis,* 996 F.2d 1214 1993 U.S.App. LEXIS 15350 (6th Cir. June 15, 1993);[3] *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991) ("Federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure."); *Flowers v. Tate,* 925 F.2d 1463 (6th Cir.1991); *Spruytte,* 753 F.2d at 508 (violation of state law does not by itself constitute deprivation of due process); *Spencer v. Moore,* 638 F.Supp. 315, 316 (E.D.Mo. 1986); *Azeez v. DeRobertis,* 568 F.Supp. 8,

10 (N.D.Ill.1982). Rather, the Sixth Circuit has previously held that the right of access to the courts requires affirmative assistance for inmates "only in the preparation of legal papers in cases involving constitutional rights and other civil rights actions *related to their incarceration.*" *Knop v. Johnson,* 977 F.2d 996, 1009 (6th Cir.1992) (emphasis added). *See also John L. v. Adams,* 969 F.2d 228, 236 (6th Cir.1992).

▮ This view was subsequently adopted by the United States Supreme Court:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey,* 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Furthermore, the Court declared that no claim exists under *Bounds* without an actual injury. According to the Court, an inmate must have sought "to file *nonfrivolous* legal claims challenging their convictions or conditions of confinement." *Lewis,* 518 U.S. at 351–53, 116 S.Ct. 2174 (emphasis added).[4] No actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented."[5] *Id.*

---

**3.** Although citation to unpublished Sixth Circuit precedents is disfavored, this case is referred to in the absence of clear published case law from this Circuit "because it establishes the law governing the present action and 'there is no [Sixth Circuit] published opinion that would serve as well.'" *Norton v. Parke,* 892 F.2d 476, 479 n. 7 (6th Cir.1989).

**4.** The requirement that an indigent prisoner has no constitutional or other right of access to the courts to prosecute a frivolous action has found expression in previous lower court

rulings. *See, e.g., In re Billy Roy Tyler,* 839 F.2d 1290, 1292 (8th Cir.1988); *Phillips v. Carey,* 638 F.2d 207, 209 (10th Cir.1981).

**5.** This decision adopts the view widely adopted by the lower courts that a viable *Bounds* claim depends on an inmate pleading and proving he was actually impeded in his ability to conduct a particular case. *Walker v. Mintzes,* 771 F.2d 920, 932 (6th Cir.1985). *See also Strickler v. Waters,* 989 F.2d 1375, 1383 n. 10 (4th Cir.1993) (citing numerous cases requiring some actual prejudice as an

at 356., 116 S.Ct. 2174 Plaintiff has not asserted any interference with a valid constitutional claim.

Much less is there any right to a particular result from prison grievance proceedings. In essence, plaintiff complains primarily because TDOC, NWCX, and WTSP officials have repeatedly adopted an interpretation of their grievance procedure regulations that differs from his interpretation. Even if plaintiff is correct, however, he simply has no claim. Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation. *Hewitt,* 459 U.S. at 471, 103 S.Ct. 864. There is no right to a particular type of process in the handling of prison grievances. As with disciplinary proceedings, "there is a fundamental logical flaw in viewing the process as a substantive end in itself." *Levin,* 101 F.3d at 46 ("there is a fundamental logical flaw in viewing the process as a substantive end in itself"). The federal courts do not parse state regulations in search of language that creates a liberty interest, but instead examine whether an alleged deprivation constitutes an atypical and significant change in the conditions of a prisoner's confinement. *Sandin,* 515 U.S. at 484–87, 115 S.Ct. 2293. *Cf. Harrill,* 55 F.3d at 1125 (state law cannot create a federal constitutional right); *Spruytte,* 753 F.2d at 508 (violation of state law does not by itself constitute deprivation of due process). Plaintiff does not allege any atypical and significant change in the conditions of his six to forty-six year murder sentence.

Finally, federal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures. As with disciplinary proceedings, the scope of "the procedural due process required before

one may be deprived of a liberty interest is governed by federal constitutional law and not state law." *Black,* 4 F.3d at 447. The use of mandatory language in mere procedural grievance regulations does not create any substantive liberty interest. *See Rimmer–Bey,* 62 F.3d at 790–91 (holding post-*Sandin* that mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause), *McLaurin,* 48 F.3d at 947 (same, pre-*Sandin*). Thus, to the extent that the complaint should be construed as asserting that the defendants did not comply with administrative regulations in connection with any grievance decision, plaintiff has not suffered any deprivation of due process because of such noncompliance. In a § 1983 action, a federal court considers whether a *constitutional* right has been infringed, not whether bureaucratic procedures have been violated. Plaintiff's claims based on the processing of his grievances are simply frivolous.

Insofar as plaintiff complains of lack of access to the NWCX law library because the computerized research system was not installed, he has no claim. As recognized even before *Lewis,* "[w]e are concerned with a right of access *to the courts,* not necessarily to a prison law library." *Walker,* 771 F.2d at 932; *Jones,* 697 F.2d at 803. Furthermore, plaintiff has not complained that the lack of that system prejudiced *him* in any way, merely that it rendered the law library generally inadequate. Such general inadequacy claims, however, are not cognizable after *Lewis.* Plaintiff's failure to allege any actual interference renders his claim meritless.

Furthermore, plaintiff alleges no way in which he was even conceivably prejudiced by the alleged refusal to provide him with

essential component of a *Bounds* claim); *Jones v. Franzen,* 697 F.2d 801, 803 (7th Cir. 1983). Lower courts had previously held that the inmate must have suffered some actual interference with a case, such as missing a court deadline, the dismissal of an action that would have otherwise proceeded, or the im-

position of sanctions. *Weaver v. Toombs,* 756 F.Supp. 335, 340 (W.D.Mich.1989). *See also Martin v. Davies,* 917 F.2d 336, 340 (7th Cir. 1990) (claim of interference with court-access must be supported by factual allegations of missed court-dates, loss of a won case, or an inability to file on time).

the computerized system. Plaintiff's complaint shows that he has adequate access to the courts. To the extent that lack of a computerized research makes it more difficult for him to prepare pleadings, such inconvenience is merely "part of the penalty that criminal offenders pay for their offenses against society." (*Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Hewitt*, 459 U.S. at 467, 103 S.Ct. 864.

■ Furthermore, prison regulations and practices that restrict First Amendment rights are permissible if reasonably related to a legitimate penological objective. *Thornburgh v. Abbott*, 490 U.S. 401, 414–16, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, , 350–53, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Turner v. Safley*, 482 U.S. 78, 92, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). "The core functions of prison administration" are "maintaining safety and internal security." *Turner*, 482 U.S. at 92, 107 S.Ct. 2254. *See also Thornburgh*, 490 U.S. at 415, 109 S.Ct. 1874 (protecting prison security is central to all other correctional goals); *Meadows v. Hopkins*, 713 F.2d 206, 209–10 (6th Cir.1983) (same).

■ Plaintiff's behavior is unquestionably inimical to prison security. He has demonstrated a repeated refusal to abide by TDOC regulations for contacting prison officials and has repeatedly abused the privilege of filing grievances that attempt to interfere with the administrative staff's control of the facilities where he is confined.

■ As is typical of frivolous prisoner complaints, this plaintiff attempts to avoid the restrictions on frivolous claims with the magic talisman of retaliation. In general, prison officials may not take *adverse* administrative action against an inmate in retaliation for his protected action under the First Amendment. *Newsom v. Norris*, 888 F.2d 371, 376–77 (6th Cir.1989).

■ In general, First Amendment retaliation claims are analyzed as prescribed by *Mt. Healthy City Schl. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Sixth Circuit has succinctly summarized the Court's teaching:

(1) The threshold question is whether the plaintiff's conduct deserves constitutional protection.

(2) If the court finds that an employee's conduct was protected by the first amendment, the finder of fact must determine whether the action taken was because he engaged in the protected conduct. The employee's protected conduct must be a "substantial factor" or a "motivating factor" in the employer's decision.

(3) Once the employee meets his burden, the burden shifts to the employer to prove that the action the employee is complaining about would have taken place absent the protected conduct.

*Ratliff v. Wellington Exempted Village Schools Bd. of Educ.*, 820 F.2d 792, 795 (6th Cir.1987).

■ In the context of prison cases, claims of retaliatory administrative action must be analyzed under Fourteenth Amendment principles of substantive due process. *Cale v. Johnson*, 861 F.2d 943, 949 (6th Cir.1988). An inmate raising a substantive due process claim "faces a virtually insurmountable uphill struggle." *Rimmer–Bey*, 62 F.3d at 791 n. 4. Such claims must include a "chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir.1988). Furthermore, an inmate claiming retaliation for an exercise of First Amendment rights must show more than subsequent administrative action that he considers unsatisfactory. Rather, the prison official's conduct must transcend all bounds of reasonable conduct

and be "so reprehensible as to 'shock the conscience of the court.'" *Rimmer–Bey*, 62 F.3d at 791 n. 4 (citing *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *Williams v. Smith*, 717 F.Supp. 523, 525 (W.D.Mich.1989)). *See also Mayberry v. Spicer*, 808 F.Supp. 563, 567 (E.D.Mich.1992) (following *Williams*). The prison official's alleged conduct must constitute "an egregious abuse of governmental power." *Cale*, 861 F.2d at 950.

Additionally, the Sixth Circuit has reiterated that a retaliation claim necessitates some impairment of First Amendment rights. "Although it is clearly established that prisoners have a fundamental right of access to the courts and the right to petition for a redress of grievances, Ward does not allege that these rights have been impaired." *Ward v. Dyke*, 58 F.3d 271, 275 (6th Cir.1995) (citations omitted). In *Ward*, the Court held that prison officials did not violate an inmate's clearly established right of access to the courts through retaliation when they transferred him to a different and less desirable institution of the same security classification. Similarly, here plaintiff's rights suffered no significant impairment.

Addressing the first *Ratliff* issue, the plaintiff's conduct in this case does not deserve constitutional protection. As discussed above, plaintiff's First Amendment court-access rights have been more than adequately protected by his ability to file civil actions in the courts. As there is no right to an internal prison grievance procedure, it follows that retaliation for use of a prison grievance procedure does not implicate First Amendment rights.

Furthermore, even if a First Amendment right is implicated by this complaint, plaintiff has no claim. Again, under *Lewis v. Casey*, 518 U.S. at 355, 116 S.Ct. 2174, it is clear that no First Amendment claim exists under *Bounds* and its progeny without an actual injury. Plaintiff does not allege that he has ever had a meritorious claim of any sort to raise under either a state grievance procedure or in this Court.

Furthermore, plaintiff has alleged no chronology of events from which unconstitutional retaliation could be plausibly inferred. He alleges only that he believes that the denial of his grievances and the institution of disciplinary charges stemmed from his pursuit of numerous grievances. Given that he alleges no specific incidents, and indeed no personal impact on him at all, it is quite apparent that this case has nothing to do with the legitimate exercise of the right to inform prison staff of problems, and everything to do with this inmate's desire to engage in a power struggle with WTSP staff. An inmate has no right to appoint himself as an ombudsman, prophet, political activist, or whistle blower. That being the case, even if his confinement to segregation was related to his grievances, plaintiff has no claim for retaliation. Prison officials simply did not violate the Constitution, regardless of their motivation.

None of the conditions of confinement as recounted by plaintiff either "egregiously abuses governmental authority" or "transcends all bounds of reasonable conduct and shocks the conscience" of the Court. *Rimmer–Bey*, 62 F.3d at 791 n. 4; *Williams v. Kling*, 849 F.Supp. 1192, 1196 (E.D.Mich.1994); *Williams v. Smith*, 717 F.Supp. at 525; *Mayberry*, 808 F.Supp. at 567.

 Finally, an inmate cannot immunize himself from adverse administrative action by prison officials merely by filing grievances and then claiming that everything that happens to him is retaliatory. *Smith v. Halford*, 570 F.Supp. 1187, 1194–95 (D.Kan.1983). *Cf. Ward*, 58 F.3d at 274–75 (retaliation claim not made out simply by alleging inmate transferred after filing numerous grievances, even though prison authorities openly admitted transfer based on numerous grievance filings—plaintiff did not suffer a cognizable injury). If that were so, then every prisoner could obtain review of non-cognizable claims merely by filing a lawsuit or grievance and then perpetually claiming retaliation. A

plaintiff cannot bootstrap a frivolous complaint with a conclusory allegation of retaliation.

The Supreme Court's recent decision on prison official retaliation, in *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), does not affect this analysis. That case dealt with the issue of qualified immunity, an affirmative defense not relevant to this inquiry. This case need never reach the issue of qualified immunity because it is patently obvious from the complaint that the defendants have not visited any constitutionally cognizable deprivation on the plaintiff.

The Court has independently considered whether the Sixth Circuit's decision in *Thaddeus–X v. Blatter,* 175 F.3d 378 (6th Cir.1999) (*en banc*), entered after this complaint was filed, requires reconsideration of the analysis of plaintiff's retaliation claims. *Thaddeus–X* is a fragmented Sixth Circuit opinion in which no single rationale or opinion commands the assent of the same eight judges. In that case the Court permitted a retaliation claim to proceed despite not explicitly finding any specific underlying constitutional violation. The case involved a notorious inmate legal assistant in the state of Michigan who, before *Lewis v. Casey,* raised law library access claims and obtained a settlement under which Michigan prison officials agreed to permit him to help another prisoner, but then subjected him to a variety of unpleasant conditions after he provided the help. Among the conditions to which he was subjected was confinement in the prison's mental ward in conditions the Court described as "squalid." *Thaddeus–X,* 175 F.3d at 402.

This opinion does not require this Court to apply Rule 60(b) to vacate its order of dismissal. The plaintiff in *Thaddeus–X* was clearly subjected to conditions that constituted "atypical and significant hardship" within the scope of that term as used by *Sandin,* 515 U.S. at 484–86, 115 S.Ct. 2293. Indeed, Thaddeus–X's confinement to a mental ward was functionally equivalent to a transfer to a mental hospital—one of the types of atypical changes in the conditions of confinement that *Sandin* specifically notes as "exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." 515 U.S. at 483, 115 S.Ct. 2293 (citing *Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)). Rienholtz, however, does not allege any such atypical and significant change—merely a termination of his law clerk and clerical positions.

Furthermore, *Thaddeus–X* specifically reaffirms that a First Amendment claim based on providing assistance to other prisoners are "wholly derivative of that [other] prisoner's right of access to the courts. . . ." at 395. Unlike *Thaddeus–X,* Rienholtz was not providing any specific inmate with assistance essential to that prisoner's obtaining access to the courts. Rather, he was engaged in semi-political efforts to "reform" the NWCX law library and the WTSP commissary, neither of which are the subject of First Amendment protection in the first place. Furthermore, unlike the Michigan prisoner, Rienholtz does not allege that any specific prisoner was incapable of obtaining access to the Courts without his help. Accordingly, Rienholtz clearly has no derivative claim deserving First Amendment protection, and was, therefore, not engaged in protected First Amendment conduct. As *Thaddeus–X* recognizes, an inmate does not have a retaliation claim in the absence of such protected conduct. *id.* at 395.

Accordingly, this complaint lacks an arguable basis either in law or in fact, and is therefore frivolous. *See Denton v. Hernandez,* 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

As the complaint is frivolous, it is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

## IV. *APPEAL ISSUES*

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision *in forma pauperis*. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). An appeal is not taken in good faith if the issue presented is frivolous. *Id.* Accordingly, it would be inconsistent for a district court to determine that a complaint is too frivolous to be served, yet has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n. 1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case as frivolous also compel the conclusion that an appeal would be frivolous.

It is therefore **CERTIFIED,** pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith, and plaintiff may not proceed on appeal *in forma pauperis*.

The next matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case. The United States Court of Appeals for the Sixth Circuit has held that a certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *McGore v. Wrigglesworth*, 114 F.3d 601, 610–11 (6th Cir.1997). *McGore* sets out specific procedures for implementing the PLRA. However, as this is the third dismissal of one of plaintiff's cases as frivolous, 28 U.S.C. § 1915(g) bars him

from taking an appeal under § 1915(b). *Green v. Nottingham*, 90 F.3d 415, 417 (10th Cir.1996). Accordingly, if Rienholtz files a notice of appeal, the Clerk is **ORDERED** to assess and collect the entire fee of $105 from his prison trust fund account whenever funds are in the account, without regard to the installment payment provisions of § 1915(b). Furthermore, if Rienholtz files a notice of appeal, he must pay the entire fee within thirty days of filing that notice. If he does not, this Court will notify the United States Court of Appeals for the Sixth Circuit that he has failed to comply with the fee requirements, and that Court will dismiss his appeal. It will not be reinstated thereafter even if he does pay the filing fee. *Cf. McGore*, 114 F.3d at 609–10.

## V. *IMPOSITION OF RESTRICTIONS ON FILING PRIVILEGES*

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the third dismissal of one of his cases as frivolous.[6] Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).[7] Rienholtz is plainly a prisoner within the meaning of the statute. Accordingly, it is hereby ORDERED that Richard P. Rienholtz, TDOC registra-

---

**6.** *See supra* note 2.

**7.** The threshold requirement for a prisoner seeking to demonstrate that he is exempt from § 1915(g) restrictions is an allegation of "imminent danger of serious physical harm." *Gibbs v. Roman*, 116 F.3d 83, 86 (3d Cir. 1997). *See Pigg v. Federal Bureau of Investi-*

*gation*, 106 F.3d 1497, 1497 (10th Cir.1997); *Adepegba v. Hammons*, 103 F.3d 383, 385 (5th Cir.1996); *Abdul–Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir.1996). The Court will focus on the imminence of the danger "at the time of the alleged incident, and not at the time the complaint was filed." *Gibbs*, 116 F.3d at 83.

tion number 94415, shall not be permitted to file any further actions *in forma pauperis* without first obtaining leave of court.

■■■ Prior to the enactment of 28 U.S.C. § 1915(g), this Court had adopted the restrictions articulated in *Winslow v. Romer,* 759 F.Supp. 670, 683–85 (D.Colo. 1991) as the model for the Court's invocation of its inherent authority to impose sanctions. It is indisputable that the district courts possess such authority. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (pre–PLRA case holding no constitutional right of access to the courts to prosecute an action that is frivolous or malicious); *Mercer v. Fayette Circuit Court,* 1995 WL 222181 (6th Cir. April 13, 1995) (pre-PLRA case noting that appellant filed nine frivolous lawsuits arising out of state court prosecution); *In re Martin–Trigona,* 737 F.2d 1254, 1261 (2d Cir.1984) (pre-PLRA case holding courts possess inherent authority to sanction litigants for abusive repetitive filings). *See also Gibson v. Gibbons,* No. 97–2559–M1/A (W.D.Tenn. Aug. 14, 1997) (invoking both § 1915(g) and Court's inherent power to restrict prisoner's filing privileges). Nothing in amended 28 U.S.C. § 1915(g) restricts this authority. Further, the Court concludes that 28 U.S.C. § 1915(g) lowers the threshold for the Court's use of this inherent power. Accordingly, the Court will require that plaintiff comply with both 28 U.S.C. § 1915(g) and the further restrictions and conditions enunciated below.

To obtain leave of court, Rienholtz must file an affidavit similar to that required by the district court in *Winslow,* 759 F.Supp. at 683–85. Additionally, he must file any further complaints on a form available from the Clerk of Court. The Clerk shall not send Rienholtz more than one (1) complaint form and one (1) *in forma pauperis* application form per six months and shall not respond to such requests within three months of the most recent request. Any request for such a form must be made in writing by the defendant himself, in a letter that shall not exceed one sheet of paper.

To request leave of court, plaintiff shall file, along with any future complaint:

1) a motion requesting permission of the Court to file;

2) an affidavit certifying under penalty of perjury:

 a) that he has read and understood Rule 11 of the Federal Rules of Civil Procedure;

 b) that the complaint contains claims he knows to be reasonably based in law and fact;

 c) that he is aware that filing any further frivolous actions will result in the imposition of additional sanctions by the Court;

 d) that he is in imminent danger of serious physical injury (describing in detail the nature of the danger, why it is imminent, and the nature of the serious physical injury);

 e) that either:

 1) none of the defendants to the new action were defendants in any previous action that was dismissed as frivolous; *OR*

 2) that some of the defendants to the new action were defendants in a previous action that was dismissed as frivolous, but that the plaintiff has compared the claims in the frivolous case with the claims in the new case, and that he does not seek to sue those defendants on any claims that could have been litigated in that case; and

 f) that he has been sanctioned by this Court in this case, and state the style, jurisdiction, and docket number of this action.

Any complaint submitted by plaintiff without this motion and affidavit will not be filed but will be immediately returned to the plaintiff for failure to comply with this order. Furthermore, the Court will then impose further sanctions against the plaintiff, including a further monetary fine, which may be collected directly from his prison trust fund account.

The Clerk of Court is ORDERED not to file, open on this Court's docket, assign a new docket number, or assign to a judge, any further case whatsoever submitted by this plaintiff unless specifically directed to do so by a district judge or magistrate judge of this district.

Plaintiff is ORDERED not to file any further documents in this or any other action except a one-page notice of appeal. The Clerk shall not accept for filing in this or plaintiff's other actions any document whatsoever except that notice of appeal. Any other documents submitted shall be forthwith returned to him by the Clerk.

Finally, a copy of this order shall be sent to TDOC Commissioner Donal Campbell.