Tameca DRUMMER, Plaintiff,

v.

Mark LUTTRELL, Jr.,
et al., Defendants.

No. 99–2887–D/V.

United States District Court,
W.D. Tennessee,
Western Division.

Nov. 22, 1999.

Tameca Drummer, Memphis, TN, for plaintiff pro se.

Trust Fund Officer, Memphis, TN, miscellaneous pro se.

ORDER ASSESSING FILING FEE ORDER OF DISMISSAL ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH NOTICE OF APPELLATE FILING FEE AND ORDER IMPOSING SANCTIONS UNDER 28 U.S.C. § 1915(g)

DONALD, District Judge.

Plaintiff, Tameca Drummer, an inmate at the Shelby County Correctional Center (SCCC),[1] has filed a complaint under 42 U.S.C. § 1983. The Clerk of Court shall file the case and record the defendants as Mark Luttrell, Jr., Robert Moore, C. Robertson, J. Dunlap, Leach (first name unknown), and Chester Jones, Jr.

*I.  Assessment of Filing Fee*

Under the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $150 required by 28 U.S.C. § 1914(a). The *in forma pauperis* statute, 28 U.S.C. § 1915(a) merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, plaintiff has properly completed and submitted both an *in forma pauperis* affidavit and a prison trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in

---

1. The word prison is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.

the account exceeds $10.00, until the entire $150.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order, and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify plaintiff's name and the case number on the first page of this order.

If plaintiff is transferred to a different prison or released, she is ORDERED to notify the Court immediately of her change of address. If still confined she shall provide the officials at the new prison with a copy of this order.

If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

## II. *Analysis of Plaintiff's Claims*

Plaintiff sues SCCC Director Mark Luttrell, Jr., Chief of Security Robert Moore, Sergeant C. Robertson, Officer J. Dunlap, Disciplinary Board Member Leach, and Appeal Administrator Chester Jones, Jr. Plaintiff alleges that during a shakedown of her dormitory, she was strip-searched by Officer Dunlap. After squatting and coughing twice, plaintiff admits that she refused a direct order to squat and cough again. Dunlap called Robertson for assistance. Plaintiff also refused a direct order from Robertson to squat and cough. Robertson then instructed plaintiff to turn around so that she could be handcuffed. Plaintiff admits she also refused this order, pulled away to prevent Robertson from handcuffing her, and exited the shower area dressed in nothing but her panties. Two male officers were called for assistance. The officers forced plaintiff to the floor and placed her in handcuffs. Although one of the male officers touched one of plaintiff's breasts, she admits that this was done as the officer attempted to "untuck" her arm and wrist to place the handcuffs upon her. Plaintiff complains that all the men in the dormitory stared at her during the ten minutes before she was allowed to get dressed. Plaintiff was placed on lockdown.

Plaintiff seeks compensatory and punitive damages, restoration of her sentence credits and previous security level, and expunction of the disciplinary conviction.

■ Plaintiff has no claim for the deprivation of due process during a prison disciplinary proceeding. In general, an inmate does not have a liberty interest in a particular security classification or in freedom from segregation. *Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *Newell v. Brown,* 981 F.2d 880, 883 (6th Cir.1992); *Beard v. Livesay,* 798 F.2d 874, 876 (6th Cir.1986).

This case is another implicating a thorny question along the continuum on which many state prisoner issues eventually intersect: the line at which claims affecting merely a prisoner's liberty *within* confinement meet claims affecting the duration of that confinement. The scope of this intersection was first clearly delineated in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), which involved attempts by various New York

state prisoners to challenge prison disciplinary board decisions to deprive them of sentence credits. The Supreme Court reasoned that:

> even if restoration of respondents' good-time credits had merely shortened the length of their confinement, rather than required immediate discharge from that confinement, their suits would still have been within the core of habeas corpus in attacking the very duration of their physical confinement itself. It is beyond doubt, then, that the respondents could have sought and obtained fully effective relief through federal habeas corpus proceedings.

411 U.S. at 487–88, 93 S.Ct. 1827. The federal courts wrestled in the succeeding twenty-four years over this distinction between claims seeking to vindicate civil rights through an award of damages and those seeking to affect the duration of confinement. As the implications of *Preiser* percolated through the appellate courts, the Supreme Court gradually shed light on additional sections of the habeas/§ 1983 boundary.

On the habeas side of this continuum, in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Court identified as part of this border territory any civil rights claim requiring proof of facts or law that would necessarily call into question a pending state criminal prosecution or state court conviction. According to *Heck*, until the state court prosecution is terminated in the defendant's favor, either by a favorable jury verdict or by a post-verdict ruling on direct or collateral review setting aside a conviction, no claim under § 1983 even accrues.

The next term, the Court broadened the boundary on the damages section of the border in *Sandin v. Conner*, 515 U.S. 472, 484–87, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In *Wolff v. McDonnell*, 418 U.S. 539, 564–71, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court had identified the procedural requirements prison officials must adopt to satisfy due process when depriving a prisoner of various liberty interests, including deprivation of sentence credits and confinement to segregation. In *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Court limited the *Wolff* requirements applicable to purely administrative, rather than punitive segregation, but broadened the scope of federal court authority over prison administration by recognizing that the mandatory language of state regulations could create liberty interests protected by due process requirements. Courts were required to consider whether "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State [or federal government] has created a protected liberty interest." *Hewitt*, 459 U.S. at 472, 103 S.Ct. 864. *Sandin*, however, rejected *Hewitt*, and much of the lower-court jurisprudence that relied on *Wolff*. Without explicitly overruling *Hewitt* itself, *Sandin* returned to the question left open in *Wolff*, 418 U.S. at 564–71, 94 S.Ct. 2963: whether inmates even have a liberty interest in freedom from segregation, punitive or administrative. The Court rejected *Hewitt*'s methodology and concluded that hey do not.

> The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum*. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. *See also Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, *see, e.g., Vitek [v. Jones*, 445 U.S. 480,] 493, 100 S.Ct. 1254, 63 L.Ed.2d 552 [(1980)] (transfer to mental hospital), and *Washington [v. Harper*, 494 U.S. 210,] 221–222, 110 S.Ct. 1028, 108 L.Ed.2d 178 [(1990)] (involuntary ad-

ministration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. Neither *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), nor *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), requires such a rule.... We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.... We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff.* The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.

*Sandin,* 515 U.S. at 483–84, 486, 487, 115 S.Ct. 2293 (footnotes and some citations omitted).

■ *Sandin* thus focuses not on the content of regulations, but on the "nature of the deprivation" visited upon the inmate. *Id.* at 481, 115 S.Ct. 2293. Absent "atypical and significant hardship," a change in the conditions of confinement simply does not inflict a cognizable injury that merits constitutional protection, regardless of the motivation of the official when making the change. *Id.* at 484–86, 115 S.Ct. 2293. Thus language in state laws or prison regulations no longer creates a liberty interest protected by the Due Process Clause. *Rimmer–Bey v. Brown,* 62 F.3d 789, 790–91 (6th Cir.1995). Rather, from now on, when analyzing due process claims federal courts look neither to state laws or regulations to ascertain whether they create a liberty interest in connection with a imposition of disciplinary penalties

or reclassification, nor to the subjective motives of prison officials for effecting such changes. Instead, the Court focuses on the nature of the deprivation itself.

After [*Sandin* ], prisoners may no longer peruse state statutes and prison regulations searching for the grail of limited discretion. Instead; a prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 472, 115 S.Ct. at 2295 (emphasis added).

*Orellana v. Kyle,* 65 F.3d 29, 31 (5th Cir. 1995). According to *Orellana,* only deprivations that clearly impinge on the *duration* of confinement, will henceforth even possibly qualify for constitutional "liberty" status. *Id.* at 31–32.

■ As plaintiff has not alleged any atypical and significant hardship, she has failed to allege the deprivation of a federally recognized liberty interest, and is not entitled to any of the procedural protections enunciated in *Wolff* or its progeny. She has no due process claim.

■ As is also clear under *Sandin,* any violation of SCCC procedural regulations in disciplining plaintiff did not violate her due process rights. Even before *Sandin,* it was clear that the scope of "the procedural due process required before one may be deprived of a liberty interest is governed by federal constitutional law and not state law." *Black v. Parke,* 4 F.3d 442, 447 (6th Cir.1993). Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation. *Hewitt,* 459 U.S. at 471, 103 S.Ct. 864; *Levin v. Childers,* 101 F.3d 44, 46 (6th Cir.1996) ("there is a fundamental logical flaw in viewing the process as a substantive end in itself"); *Harrill v. Blount County, Tenn.,* 55 F.3d 1123, 1125 (6th Cir.1995) (state law cannot create a federal constitutional right); *Spruytte v. Walters,* 753 F.2d 498, 508 (6th Cir.1985) (violation of state law does not by itself constitute

deprivation of due process). Thus, even before *Sandin,* use of mandatory language in mere procedural regulations did not create any substantive liberty interest. *See McLaurin v. Morton,* 48 F.3d 944, 947 (6th Cir.1995). After *Sandin* it is even clearer that mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause. *Rimmer–Bey,* 62 F.3d at 790–91. Thus, to the extent that the complaint should be construed as asserting that the defendants did not comply with SCCC regulations in connection with the disciplinary conviction or revocation of sentence credits, plaintiff has not suffered any deprivation of due process because of such noncompliance.

■ To the extent that the complaint should be construed as attempting to circumvent *Sandin* by contending, analogously to the plaintiff in *Orellana,* that the revocation of sentence credits affects the "duration" of confinement, plaintiff still has no claim. Such arguments misread *Sandin* and *Orellana. Orellana* enunciates the widest possible reach of *Sandin's* delimitation of deprivations implicating the Due Process Clause. Not every regulation or decision that might *conceivably* or *arguably* have some effect on the time an inmate serves in confinement triggers due process scrutiny. Any claim based on the speculative effect of a particular disciplinary decision to revoke sentence credits on the ultimate end of the prisoner's sentence is arguably foreclosed by *Sandin,* 515 U.S. at 484–87, 115 S.Ct. 2293.[2]

■ Furthermore, there is no right under the Constitution to earn or receive sentence credits. *Hansard v. Barrett,* 980 F.2d 1059, 1062 (6th Cir.1992). Neither is there any fundamental right to parole or to release from a sentence of incarceration that has itself been lawfully imposed. *See Greenholtz v. Inmates of Nebraska Penal,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Tennessee law and regulations do not create a right to parole, *Wright v. Trammell,* 810 F.2d 589, 591 (6th Cir. 1987), or to earn such credits. *See* Tenn. Code Ann. § 41–21–236(a)(2) (1990).[3] Accordingly, there is no right to due process in connection with disciplinary or classification decisions that have such an uncertain effect on a particular inmate's release.

■ Even if such decisions do have a quantifiable effect on plaintiff's potential release so as to constitute a cognizable claim, however, she cannot pursue a claim for damages or injunctive relief under § 1983. After *Sandin,* in *Edwards v. Balisok,* 520 U.S. 641, 647–48, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Court returned to the habeas side of the boundary and applied *Heck* to prison disciplinary cases. According to *Balisok,* when a prisoner brings a § 1983 action claiming that he was deprived of due process during a disciplinary proceeding that resulted in the revocation of sentence-credits, and the claim if proved would "necessarily imply the invalidity of the punishment imposed," no cause of action accrues until the credits are restored. Of course, under *Preiser,* a restoration of credits can only be sought in a habeas proceeding and the relief cannot be sought in federal court unless the prisoner first presents her claim to the state

---

**2.** In addition to rejecting any notion that any convicted prisoner can ever enjoy a liberty interest in freedom from mere confinement in isolation or segregation, the *Sandin* court noted that any possible effect on Conner's future release was too attenuated to constitute a deprivation of a liberty interest protected by the Due Process Clause. *Sandin,* 515 U.S. at 487, 115 S.Ct. 2293.

**3.** Each inmate who exhibits good institutional behavior and/or who exhibits satisfactory performance within a program may be awarded time credits toward the sentence imposed, varying between one (1) day and sixteen (16) days for each month served, with not more than eight (8) days for each month served for good institutional behavior and not more than eight (8) days for each month served for satisfactory program performance in accordance with the criteria established by the department. No prisoner shall have the right to any such time credits nor shall any prisoner have the right to participate in any particular program and may be transferred from one (1) assignment to another without cause.

Tenn.Code Ann. § 41–21–236(a)(2).

court and exhausts the remedy provided by the state.

As a result, prisoners who attempt to file a federal court challenge to a prison disciplinary proceeding now find that if they allege only confinement to segregation or more severe conditions they enjoy no liberty interest and thus no due process protection at all, while if they allege a deprivation of sentence credits their claim is not cognizable under § 1983 until the credits have been restored. In either case, the state prisoner claiming a due process violation in connection with prison disciplinary proceedings has no federal forum for her damages claim.

Furthermore, *Balisok*'s bar on attacking the disciplinary conviction because of the revocation of sentence credits also bars plaintiff's claim for damages for the use of excessive force. The Eighth Amendment prohibits cruel and unusual punishment. *See generally Wilson v. Seiter*, 501 U.S. at 297, 111 S.Ct. 2321. The Eighth Amendment proscription on cruel and unusual punishment encompasses an inmate's right to be free from excessive force. *Hudson v. McMillian*, 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hudson*, 503 U.S. at 8, 112 S.Ct. 995; *Wilson*, 501 U.S. at 298, 111 S.Ct. 2321. The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970; *Hudson*, 503 U.S. at 8, 112 S.Ct. 995; *Wilson*, 501 U.S. at 298, 111 S.Ct. 2321. The subjective component requires that the official act with the requisite intent, that is, that she have a "sufficiently

culpable state of mind." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970; *Wilson*, 501 U.S. at 297, 302–03, 111 S.Ct. 2321.

In analyzing the subjective component of an Eighth Amendment excessive force claim, courts examine the purpose of the use of force.

[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley [ v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Hudson*, 503 U.S. at 7–8, 112 S.Ct. 995. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson*, 481 F.2d at 1033.[4] Prison officials are entitled to use physical force, including devices such as tasers, to compel obedience by inmates. *See, e.g., Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir.1992). Furthermore, the reasonableness of force depends on the circumstances under which it is used. Greater force may be reasonable when used in response to a serious disturbance or acts of inmates violence.

The Supreme Court has repeatedly observed that prisons present an "ever-present potential for violent confrontation." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)). *See also Wolff*, 418 U.S. at 561–62, 94 S.Ct. 2963 (prisons are populated by violent offenders, causing unremitting tension among inmates and between inmates and guards). Consequently, the Court has

---

**4.** While, as reiterated by the Sixth Circuit in *Pelfrey v. Chambers*, 43 F.3d 1034, 1036 (6th Cir.1995), the full scope of *Johnson v. Glick* has been bypassed by more current jurisprudence, the command to view prison violence from the practical and realistic perspective of

the prison instead of the abstract and theoretical perspective of the bench has been repeatedly reasserted by the Supreme Court. *See, e.g., Hudson*, 503 U.S. at 9–10, 112 S.Ct. 995; *Pelfrey*, 43 F.3d at 1040–41 (Batchelder, J. dissenting).

concluded that security is the overriding penological interest at stake in any jail or prison. "[T]he core functions of prison administration [are] maintaining safety and internal security." *Turner v. Safley,* 482 U.S. 78, 92, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). *See also Thornburgh v. Abbott,* 490 U.S. 401, 415, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (protecting prison security is central to all other correctional goals); *Meadows v. Hopkins,* 713 F.2d 206, 209–10 (6th Cir.1983). Inmates "cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control." *Caldwell,* 968 F.2d at 595 (quoting *Soto v. Dickey,* 744 F.2d 1260, 1267 (7th Cir.1984)). And of course, the internal safety and security of the SCCC is the means by which SCCC officers protect the legitimate personal safety rights of inmates under the Eighth Amendment.

A decision on how to maintain or restore order and discipline is for a prison official, so long as he does not violate any inmate's Eighth Amendment rights. Courts should not second-guess prison officials regarding which of a range of constitutional methods they employ to suppress a prison disturbance. Here, the officers were attempting to maintain order in the face of an inmate's refusal to submit to direct orders during a search for contraband. Any complete unit search in any prison necessarily involves an inherent risk to prison security because of the inmate's motives to prevent the discovery of contraband or to destroy contraband before it can be discovered or connected to the possessor. Plaintiff admits that she disobeyed three direct orders. Any disobedience of direct orders in a prison carries an automatic and inherent risk of further violence and disturbance that poses a serious threat to internal security and the personal safety of other inmates and prison staff. Whether the particular force used was necessary to maintain or restore order and discipline or was applied maliciously and sadistically to cause harm is inextricably intertwined with the conditions existing at the time of the order, with the issue of whether the

prisoner in fact disobeyed an order, and with the nature and scope of the order. Accordingly, plaintiff's claim of excessive force necessarily attacks the validity of the disciplinary charge and the penalty of lost sentence credits. Accordingly, plaintiff's claims, whether for excessive force or a due process violation, cannot accrue while that disciplinary conviction still stands.

■ To the extent that plaintiff demands restoration of her sentence credits, she must seek relief through a habeas petition. A habeas petitioner, of course, must first exhaust all available state remedies. 28 U.S.C. § 2254(b). *See, e.g., Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). *See also* Rule 4, Rules Governing Section 2254 Cases in the United States District Courts. A Tennessee prisoner seeking to challenge a disciplinary board's decision does have such remedies. *See generally Davis Group (MC), Inc. v. Metro. Gov't. of Nashville and Davidson Cnty.,* 912 S.W.2d 178, 180–81 (Tenn.App.) (holding that review of county administrative action may be had by petition for certiorari in chancery court), *perm. app. denied* (Tenn.1995); *Brigham v. Lack,* 755 S.W.2d 469, 471 (Tenn.Crim.App.1988) (holding that declaratory judgment action in Davidson County Chancery Court under State Administrative Procedure Act is only proper remedy for prisoner seeking review of Tennessee Department of Corrections decision regarding sentence credits or release date).

■ A petitioner has failed to exhaust her available state remedies if she has the opportunity to raise her claim by any available state procedure. *Preiser,* 411 U.S. at 477, 489–90, 93 S.Ct. 1827. Moreover, to exhaust these state remedies, the applicant must have presented the very issue on which she seeks relief from the federal courts to the courts of the state that she claims is wrongfully confining her. *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994).

Here, Drummer does not allege any exhaustion of her state remedies. Those remedies are plainly available as explained above. Accordingly, it would be futile to construe this complaint as a habeas petition.

Additionally, this document does not comply with Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, because it neither adequately "specif[ies] all the grounds for relief which are available to the petitioner and of which he has or by the exercise of reasonable diligence should have knowledge" nor "set[s] forth in summary form the facts supporting each of the grounds thus specified." Rule 2(c). The document does not give adequate information on the nature of plaintiff's attempt to exhaust her state administrative and judicial remedies. The complaint states no facts that would support a claim that her confinement violates the United States Constitution. Petitioner, even a *pro se* prisoner, bears the burden of presenting a habeas petition in a manner that complies with the rules and is sufficiently comprehensible to permit the Court to ascertain what claims are being asserted. Construed as an attempt at a petition this complaint does nothing of the sort. A petition that is incomprehensible does not establish a right to habeas relief from the federal court. The Court therefore declines to construe this complaint as a habeas petition.

Accordingly, this complaint lacks an arguable basis either in law or in fact and is, therefore, frivolous. *See Denton v. Hernandez,* 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

As the complaint is frivolous, it is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

### III. *Appeal Issues*

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision *in forma pauperis.* Twenty-eighth U.S.C. § 1915(a)(3) provides that an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith.

■ The good faith standard is an objective one. *Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). An appeal is not taken in good faith if the issue presented is frivolous. *Id.* Accordingly, it would be inconsistent for a district court to determine that a complaint is too frivolous to be served, yet has sufficient merit to support an appeal *in forma pauperis. See Williams v. Kullman,* 722 F.2d 1048, 1050 n. 1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case as frivolous also compel the conclusion that an appeal would be frivolous.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith, and plaintiff may not proceed on appeal *in forma pauperis.*

■ The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case. The United States Court of Appeals for the Sixth Circuit has held that a certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *McGore v. Wrigglesworth,* 114 F.3d 601, 610–11 (6th Cir.1997). *McGore* sets out specific procedures for implementing the PLRA. However, as this is the third dismissal [5] of one of plaintiff's cases

---

**5.** Drummer previously filed the following cases that were dismissed as frivolous:

    1. *Drummer v. Herenton, et al.,* No. 99–2288–Ml/V (W.D.Tenn. May 18, 1999), a § 1983 complaint dismissed as frivolous

pursuant to 28 U.S.C. § 1915(e)(2)(B)(i); and

    2. *Drummer v. Rout, et al.,* No. 99–2063–D/A (W.D.Tenn. July 2, 1999) (dismissing § 1983 claims as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i?)).

as frivolous, 28 U.S.C. § 1915(g) bars her from taking an appeal under § 1915(b). *Green v. Nottingham*, 90 F.3d 415, 417 (10th Cir.1996).

Accordingly, if Drummer files a notice of appeal, the Clerk is ORDERED to assess and collect the entire fee of $105 from her prison trust fund account whenever funds are in the account, without regard to the installment payment provisions of § 1915(b). Furthermore, if Drummer files a notice of appeal, she must pay the entire fee within thirty days of filing that notice. If she does not, this Court will notify the United States Court of Appeals for the Sixth Circuit that she has failed to comply with the fee requirements, and that Court will dismiss her appeal. It will not be reinstated thereafter even if she does pay the filing fee. *Cf. McGore*, 114 F.3d at 609–10.

## IV. *IMPOSITION OF RESTRICTIONS ON FILING PRIVILEGES*

■ For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the third dismissal of one of her cases as frivolous.[6] Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).[7] Drummer is plainly a prisoner within the meaning of the statute. Accordingly, it is hereby ORDERED

that Tameca Drummer, prison number 162911, shall not be permitted to file any further actions *in forma pauperis* without first obtaining leave of court.

Prior to the enactment of 28 U.S.C. § 1915(g), this Court had adopted the restrictions articulated in *Winslow v. Romer*, 759 F.Supp. 670, 683–85 (D.Colo.1991) as the model for the Court's invocation of its inherent authority to impose sanctions. It is indisputable that the district courts possess such authority. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (pre-PLRA case holding no constitutional right of access to the courts to prosecute an action that is frivolous or malicious); *Mercer v. Fayette Circuit Court*, 52 F.3d 325, 1995 WL 222181 (6th Cir.1995) (pre-PLRA case noting that appellant filed nine frivolous lawsuits arising out of state court prosecution); *In re Martin–Trigona*, 737 F.2d 1254, 1261 (2d Cir.1984) (pre-PLRA case holding courts possess inherent authority to sanction litigants for abusive repetitive filings). *See also Gibson v. Gibbons*, No. 97–2559–Ml/A (W.D.Tenn. Aug. 14, 1997) (invoking both § 1915(g) and Court's inherent power to restrict prisoner's filing privileges). Nothing in amended 28 U.S.C. § 1915(g) restricts this authority. Further, the Court concludes that 28 U.S.C. § 1915(g) lowers the threshold for the Court's use of this inherent power. Accordingly, the Court will require that plaintiff comply with both 28 U.S.C. § 1915(g) and the further restrictions and conditions enunciated below.

To obtain leave of court, Drummer must file an affidavit similar to that required by the district court in *Winslow*, 759 F.Supp. at 683–85. Additionally, she must file any further complaints on a form available

---

**6.** See footnote 5 *supra*.

**7.** The threshold requirement for a prisoner seeking to demonstrate that he is exempt from § 1915(g) restrictions is an allegation of "imminent danger of serious physical harm." *Gibbs v. Roman*, 116 F.3d 83, 86 (3d Cir. 1997). *See Pigg v. Federal Bureau of Investi-*

gation, 106 F.3d 1497, 1497 (10th Cir.1997); *Adepegba v. Hammons*, 103 F.3d 383, 385 (5th Cir.1996); *Abdul–Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir.1996). The Court will focus on the imminence of the danger "at the time of the alleged incident, and not at the time the complaint was filed." *Gibbs*, 116 F.3d at 83.

from the Clerk of Court. The Clerk shall not send Drummer more than one (1) complaint form and one (1) *in forma pauperis* application form per six months and shall not respond to such requests within three months of the most recent request. Any request for such a form must be made in writing by the defendant herself, in a letter that shall not exceed one sheet of paper.

To request leave of court, plaintiff shall file, along with any future complaint:

1) a motion requesting permission of the Court to file;

2) an affidavit certifying under penalty of perjury:

a) that she has read and understood Rule 11 of the Federal Rules of Civil Procedure;

b) that the complaint contains claims she knows to be reasonably based in law and fact;

c) that she is aware that filing any further frivolous actions will result in the imposition of additional sanctions by the Court;

d) that she is in imminent danger of serious physical injury (describing in detail the nature of the danger, why it is imminent, and the nature of the serious physical injury);

e) that either:

1) none of the defendants to the new action were defendants in any previous action that was dismissed as frivolous; *OR*

2) that some of the defendants to the new action were defendants in a previous action that was dismissed as frivolous, but that the plaintiff has compared the claims in the frivolous case with the claims in the new case, and that she does not seek to sue those defendants on any claims that could have been litigated in that case; and

f) that she has been sanctioned by this Court in this case, and state the style, jurisdiction, and docket number of this action.

Any complaint submitted by plaintiff without this motion and affidavit will not be filed but will be immediately returned to the plaintiff for failure to comply with this order. Furthermore, the Court will then impose further sanctions against the plaintiff, including a further monetary fine, which may be collected directly from her prison trust fund account.

The Clerk of Court is ORDERED not to file, open on this Court's docket, assign a new docket number, or assign to a judge, any further case whatsoever submitted by this plaintiff unless specifically directed to do so by a district judge or magistrate judge of this district.

Plaintiff is ORDERED not to file any further documents in this or any other action except a one-page notice of appeal. The Clerk shall not accept for filing in this or plaintiff's other actions any document whatsoever except that notice of appeal. Any other documents submitted shall be forthwith returned to her by the Clerk.

Finally, a copy of this order shall be sent to SCCC Director Mark Luttrell, Jr.